Calvin Paul Walker

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-01-518-CR

CALVIN PAUL WALKER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  INTRODUCTION

Appellant Calvin Paul Walker appeals his conviction by a jury for the attempted murder of Susan Burns.  Appellant raises six issues for our review:  (1 & 2) that the trial court erred by not including the lesser included offenses of aggravated assault with a deadly weapon and assault with bodily injury in the jury charge; (3) that the evidence was factually insufficient to support Appellant’s conviction for attempted murder; (4 & 5) that the trial court erred by admitting prejudicial hearsay; and (6) that the trial court erred by denying Appellant’s motion for mistrial after a witness testified she was told there was an attempt on Burns’s life.  We will affirm.

II.  FACTUAL AND PROCEDURAL HISTORY

During trial, the State presented evidence that Donnie Glassey, who was on federal probation at the time of Burns’s attack, was the leader of a theft ring operating in Tarrant County in 2000.  Susan Burns, Joe Briton, DeeDee Schneider, Darren Soltier, Darla McCullough, and others participated in the ring.  Susan Burns testified that she became aware of the theft ring in the fall of 2000.  At that time, Burns was living with Soltier and McCullough, and Soltier was supplying the group illegal drugs.  Another individual with the street name “K Dog” also provided them with drugs. 

In November 2000, Burns and Briton were arrested for a robbery at a Boot Town store, and Glassey bonded them out of jail the next day.  Burns told Glassey that if he did not reveal to the police the people who actually committed the crime, she was going to go to the police herself to tell them everything about the theft ring and its crimes, including that Glassey had told her he committed the Boot Town theft.

DeeDee Schneider testified that Glassey told her he wanted to “take care of” Burns and Briton, who were causing him problems, because Glassey did not want to go back to jail.  Schneider testified that, on the evening of December 6, 2000, she observed Glassey mixing antifreeze with Gatorade and purchasing crack cocaine that he had asked to be “cooked down” with rat poison.  Schneider said that Glassey told her he was going to “take care of the problems.”  Schneider testified that, on the same night, she called the police because she knew that Glassey planned to kill Burns and Briton.

Burns testified at trial, that after their release from jail, Burns and Briton went to the Caravan Motel in Arlington, Texas.  Briton was afraid and left town on December 5, 2000.  Burns remained at the motel with her eleven-year-old black Labrador, Harley.  Burns spoke with Glassey on the phone, and they agreed to meet at the Caravan Motel.  Glassey was to bring beer, pizza, and crack cocaine.

On the evening of December 7, Glassey, K Dog, and a third man, later identified as Appellant, went to room 127 at the Caravan Motel, where Burns was staying with her dog, Harley.  Burns described how after entering the room, Appellant kicked Harley, which upset Burns.  Glassey suggested that K Dog take the dog with him to get the beer and pizza, but Burns refused to let him take the dog.  K Dog left the room alone, and Glassey offered to take the dog outside for a walk, which Burns permitted him to do. 

Burns testified that as soon as Glassey took the dog outside, Appellant hit Burns in the head, knocked her to the ground, wrapped a cord around her neck, and started to strangle her.  At first, Burns said she was able to get her hand under the cord to keep it from covering her windpipe.  Burns testified that the cord was cutting into her neck like a knife, and she was screaming for help. Because her hand was under the cord, Burns was able to pull the cord hard enough to break it.  Appellant was not deterred, however, and he again wrapped the cord around her neck.  This time, Burns did not get her hand under the cord, and she testified that she could not breathe at all, she felt her eye pop, there was blood in her eye, and her ears were pounding.  Burns testified that she had an out-of-body experience and “felt like [she] was up in the corner of the room . . . looking down at [her]self and [she] was saying, Susie he is killing you, he’s killing you, do something, and [she] couldn’t do anything.” 

During the attack, Sergeant Mark Simpson arrived at the motel to check on Burns and Briton because of Schneider’s earlier conversation with the police. Sergeant Simpson testified that he saw Glassey standing outside of room 127 with a black dog.  Sergeant Simpson approached Glassey and asked if he was Briton and if Burns was in the room.  Before he could ask another question, Sergeant Simpson heard a muffled cry come from inside the room, followed by a noise that sounded like a body falling against the glass front of the motel room, followed by a high-pitched squeal.

Sergeant Simpson testified that he tried to get in the room, but the door was locked.  He pounded on the door, identified himself as a police officer, and demanded that he be let inside the room.  Glassey also began beating on the window, yelling “the cops are here.”  Glassey then let go of the dog and ran away.  Burns testified that when she heard the banging and pounding, Appellant let go of the cord and ran toward the door in response to the noise. Burns testified that when he ran out the door, it was as if she “sprang back into [her] body,” and she could finally breathe again.

Sergeant Simpson testified that the motel door flung open, and a man with a build consistent with that of Appellant ran out the door, going in the opposite direction of Glassey.  While the door was open, Sergeant Simpson briefly saw Burns in the room, but he did not have time to enter the room before the door closed.  Because he heard another scream, Sergeant Simpson did not chase either man, but instead stayed at the room and convinced Burns to open the door again.

Sergeant Simpson testified that he observed Burns’s skin color was a “very, very deep purple” color, going into a mottled red color with free-flowing blood coming from her hairline and bruising around her face.  He also saw that two pieces of electrical cord had been wrapped around her neck.  The police obtained a statement from K Dog and compiled a photospread that included Appellant’s picture.  Burns identified Appellant as her attacker in the photospread and independently identified Appellant as her attacker at trial.  After considering all of the evidence presented at trial, the jury convicted Appellant of attempted murder and assessed a life sentence.

III.  
FACTUAL SUFFICIENCY

In his third issue, Appellant contends that the evidence was factually insufficient to support his conviction for attempted murder.  We disagree.

In reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the 
jury’s verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.

In performing this review, we give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis,
 922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder.  
Santellan v. State
, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997).  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 

To make a determination of factual insufficiency, a complete examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Appellant sets forth five points in support of his challenge to the factual sufficiency of the evidence.

Appellant first contends that if Glassey wanted Burns dead, he could have killed her with the poisoned Gatorade or crack cocaine.  Thus, Appellant argues that Glassey would not have needed an accomplice; however, Appellant suggests that if Glassey merely wanted to “rough Burns up,” an accomplice would be helpful since Burns had a large dog.  As the State points out, Glassey’s intent was not an element of the offense with which Appellant was charged.  Appellant was convicted of attempted murder, and we review the factual sufficiency of the evidence only as to Appellant’s intent, not Glassey’s.  
See
 
Tex. Penal Code Ann.
 §§ 15.01, 19.02 (Vernon 2003). 

Appellant also complains that the evidence was factually insufficient to show that he had the specific intent to murder Burns.  Appellant claims that the evidence showed only the intent to commit an assault.  Appellant argues that Sergeant Simpson was helpless to prevent a murder because the door was locked, and if Appellant had intended to kill Burns, he could have done so and then fled.  Appellant suggests that “this was not an aborted murder attempt,” but rather a “completed assault.”  The State responds that Appellant had two choices when the police officer began beating on the door; either he could have continued strangling Burns, or he could have tried to escape.  The fact that Appellant chose to run when Sergeant Simpson arrived does not demonstrate that he had no intent to murder Burns while he was strangling her.

Appellant further argues that the evidence was factually insufficient because the electrical cord was not a deadly weapon.  Appellant reasons that the fact that the cord broke during the attack demonstrates that the cord was not strong enough to serve as a garrote or to kill a person.  While it is undisputed that the cord broke when Burns got her hand between the cord and her neck, Burns testified that her attacker continued to strangle her with the broken pieces and that she could not breathe at all until her attacker stopped strangling her upon being interrupted by the arrival of a police officer.  Moreover, Detective Byron Stewart, one of the investigating police officers in this case, examined the cord and testified that the cord was a deadly weapon. We agree that the evidence is factually sufficient that the cord, as used by Burns’s attacker, constituted a deadly weapon.  
See
 
Tex. Penal Code Ann
. § 1.07(a)(17)(B)
 (“‘Deadly weapon’ means . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.”); 
McCain v. State
, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding evidence that a butcher knife was visible in a defendant’s pocket as he assaulted a robbery victim was sufficient to support a finding that he intended to use the knife in a manner capable of causing death or serious bodily injury); 
Thomas v. State
, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991) (stating that objects such as automobiles, telephone cords, bathwater, and feather pillows may become deadly weapons by virtue of the manner in which they are used in an offense); 
Charleston v. State
, 33 S.W.3d 96, 100 (Tex. App.—Texarkana 2000, pet. ref’d) (listing factors that may be used in determining whether an object is capable of causing death or serious bodily injury, for purposes of establishing that an object is a deadly weapon).

In support of his factual sufficiency challenge, Appellant also disputes whether Burns suffered serious bodily injury.  Appellant contends that Burns’s medical records, admitted as State’s Exhibit Nine, contradicted her testimony that her wrist and a rib were broken as a result of the attack.  We agree with the State’s argument that serious bodily injury is not an element of the offense of attempted murder.  
See
 
Tex. Penal Code Ann.
 §§ 15.01, 19.02; 
Flanagan v. State
, 675 S.W.2d 734, 742 (Tex. Crim. App. 1984) (op. on reh’g).

Finally, Appellant maintains that the evidence was factually insufficient to support his conviction because he alleges Burns was mistaken about the identity of her attacker.  Appellant refers to Sergeant Simpson’s testimony that he only had a glimpse of the attacker in the darkness and was not able to identify anything more than the race and build of the man fleeing from Burns’s room.  Appellant also points out that the police did not check Burns’s room for fingerprints.  In short, Appellant argues the State had no case without Burns’s identification, which Appellant asserts was erroneous.  

Burns positively identified Appellant as her attacker in a photographic lineup and again at trial.  Moreover, Burns testified that she based her in-court identification on her recollection of the night of her attack, including the moment that Appellant kicked her dog, Harley, and not on the photospread identification.
(footnote: 2)  With respect to Appellant’s contention that Burns mistakenly identified him because she failed to mention highlights in his hair, there is no evidence in the record to show when any highlighting was done.  As the State points out, Appellant’s book-in photo was taken more than two weeks after he attempted to strangle Burns; therefore, the jury could have determined from the evidence that he changed his hair color in that time period. 

We have extensively reviewed the record under the applicable standards of review, giving due deference to the fact finder’s determinations.  
See Johnson
, 23 S.W.3d at 7; 
Clewis
, 922 S.W.2d at 129
. 
 We hold that the evidence was factually sufficient to support the verdict that Appellant committed the offense of attempted murder. 
 See Johnson
, 23 S.W.3d at 7; 
Clewis
, 922 S.W.2d at 129
.  Accordingly, we overrule Appellant’s third issue.

IV.  JURY CHARGE

In his first issue, Appellant argues that the trial court erred by overruling his objection to the failure of the jury charge to include the lesser included offense of aggravated assault with a deadly weapon.  In his second issue, Appellant complains that the trial court erred by overruling his objection to the failure of the jury charge to include the lesser included offense of assault with bodily injury.  We disagree.

To determine whether a jury must be charged on a lesser included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  The first step is to decide whether the offense is a “lesser included offense” as defined in article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.

A lesser included offense is defined both in terms of the offense charged and the facts of the case:  “An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann
.
 art. 37.09(1).  Therefore, our analysis of whether an offense is a lesser included offense of the charged offense must be made on a case-by-case basis.  
Bartholomew v. State
, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); 
Day v. State
, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh’g).  It does not matter if the charged offense can be established on a theory that does not contain the lesser offense; the issue is whether proof of the charged offense, in 
this
 case, actually included proof of the lesser included offense as defined in article 37.09. 
 Schweinle v. State,
 915 S.W.2d 17, 18 (Tex. Crim. App. 1996); 
Broussard v. State
, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).

The State does not argue under the first step; rather, the State asserts that Appellant’s claims fail because he cannot meet the second step of the test. 
See Moore
, 969 S.W.2d at 8; 
see also
 
Godsey v. State
, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (“Aggravated assault . . . conduct [is a] lesser included offense[] of attempted murder . . . .”); 
Nejnaoui v. State
, 44 S.W.3d 111, 118-19 (Tex. App.—Houston [14
th
 Dist.] 2001, pet. ref’d) (stating that aggravated assault can be a lesser included offense of attempted murder); 
Villarreal v. State
, 809 S.W.2d 295, 298 (Tex. App.—Corpus Christi 1991, pet. ref’d) (“Appellant was entitled to a charge on aggravated assault if the evidence showed that he, if guilty, was only guilty of the lesser included offense of aggravated assault.“); 18 
Tex. Jur.
 
3d
 
Criminal Law
 § 188 (2001) (“Aggravated assault is a lesser included offense of . . . attempted murder.”).

Under the second step, we evaluate the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense, and not of the greater. 
 Lofton v. State
, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001);
 Moore
, 969 S.W.2d at 8.  
The evidence must be evaluated in the context of the entire record.  
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant on the greater offense while convicting him of the lesser included offense.  
Id.  
The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id.
  If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.  
Schweinle
, 915 S.W.2d at 19; 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).

The evidence at trial showed that Glassey wanted to kill Burns and that both he and Appellant went to Burns’s motel room.  Appellant began strangling Burns, and despite Burns’s ability to break the cord, Appellant continued to strangle her.  The evidence indicates that Appellant only stopped strangling Burns when Sergeant Simpson arrived and his presence was made known to Appellant.

Appellant’s brief raises the same five points from his factual sufficiency challenge in support of his charge issues.  During Appellant’s closing argument, however, he argued under two broad theories:  (1) that the cord was not a deadly weapon; and (2) that Burns was mistaken about the identity of her attacker, so the State failed to meet its burden of proving Appellant was the person who attempted to murder Burns.  At trial, Appellant presented no evidence that Burns’s attacker merely intended to “rough [her] up,” as Appellant contends in his brief.  Appellant only presented evidence that neither the police nor Burns could identify him as her attacker.  Thus, Appellant sought to show that he was not the person who attacked Burns, rather than showing that he only intended to assault her.

Under these facts, the evidence that Appellant intended to murder Burns is not so weak that it is subject to more than one reasonable inference.
  See Schweinle
, 915 S.W.2d at 19.  Therefore, we hold that the trial court did not err by refusing to include in the jury charge the lesser included offenses of aggravated assault with a deadly weapon or assault with bodily injury.  
See Wesbrook v. State, 
29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000) (holding defendant convicted of capital murder not entitled to instruction on aggravated assault), 
cert. denied
, 532 U.S. 944 (2001);
 Villarreal
, 809 S.W.2d at 298 (holding defendant convicted of attempted murder was not entitled to an aggravated assault charge).

Appellant also argues that to the extent we conclude he has not shown that he was entitled to submission of the lesser included offenses, the case law requiring affirmative evidence showing the commission of only the lesser included offense violated his rights under the Fifth Amendment of the United States Constitution because, as Appellant asserts, the law effectively compels a defendant to take the stand and admit committing the lesser included offense but deny committing the greater offense.  
See
 
U.S. Const. 
amend. V.  Appellant did not object to the charge or otherwise raise this complaint in the trial court.  Accordingly, we hold that Appellant failed to preserve his alleged constitutional error for our review by failing to timely object on that basis.  
See 
Tex. R. App. P. 
33.1;
 Briggs v. State
, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (stating that even constitutional errors can be waived).  We overrule Appellant’s first and second issues.

V.  HEARSAY

In his fourth issue, Appellant contends that the trial court erroneously admitted prejudicial hearsay testimony by Schneider that Glassey told her he intended to take care of Burns.  Additionally, Appellant complains by his fifth issue that the trial court erroneously admitted prejudicial hearsay that Glassey intended to take care of his problems.  We disagree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).
  
In order to be considered timely, the objection must be made at the first opportunity or as soon as the basis of the objection becomes apparent.  
See id
.  The trial court’s overruling of an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.  
Leday v. State
, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998);
 Beheler v. State
, 3 S.W.3d 182, 187 (Tex. App.—Fort Worth 1999, pet. ref’d).

Appellant objected on the basis of hearsay to the State asking Schneider “[d]id [Glassey] tell you what he was planning on doing that day?”  After the State argued several theories of admissibility, the court overruled Appellant’s objection.  Schneider responded that Glassey told her “[h]e was going to take care of Susan Burns and Joe Briton.”

Following this question regarding Glassey’s statement, Schneider testified that she personally observed Glassey poisoning Gatorade and crack cocaine to give to Burns and Briton.  Schneider testified that she asked Glassey what he was doing.  When the State asked Schneider what Glassey told her, Appellant objected on the basis of hearsay, which the court overruled.  Appellant then requested a running objection to the statements of Glassey as hearsay, to which the court responded, “I’m uncomfortable with the running objection to that topic.”  Appellant stated that he would rise to object, and Schneider then answered the State’s question, stating that Glassey said “[h]e was afraid of prison, and he was going to take care of his problems before he was sent back to prison.”

A few moments later, Schneider testified without objection that she called the police because she knew Glassey was going to kill Burns and Briton, and that she told the police that “[Glassey] said he was going to kill [Burns] and [Briton].”  While Appellant objected to Glassey’s statements about taking care of Burns and Briton and taking care of his problems, Appellant failed to continue objecting to the same testimony at other times during the trial.  Because Appellant did not object to this other testimony, we hold that he failed to preserve his complaint for review, and any error in admitting the complained-of testimony concerning Glassey taking care of Burns and Briton and his problems was cured.  
See Leday
, 983 S.W.2d at 718
; 
Beheler
, 3 S.W.3d at 187.  Accordingly, we overrule Appellant’s fourth and fifth issues.

VI.  MOTION FOR MISTRIAL

In his sixth issue, Appellant complains that the trial court erroneously denied his motion for mistrial after Schneider testified that she was told there was an attempt on Burns’s life.  We disagree.

We review a trial court’s denial of a motion for mistrial under an abuse of discretion standard.  
See Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  Mistrials are an extreme remedy for curing prejudice occurring during trial.  
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).  They ought to be exceedingly uncommon and employed only when less drastic remedies are inadequate to the task of removing residual prejudice.  
Id
.  A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.  
Hinojosa v. State
, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).  Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer.  
Ovalle v. State
, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

Toward the end of Schneider’s testimony on direct examination, the following exchange occurred:

[STATE:]  Did you see Detective Price later on that night?

[SCHNEIDER:]  Yes.

[STATE:]  Did you understand that there was an attempt on [Burns’s] life?

[SCHNEIDER:]  Yes.

[DEFENSE COUNSEL:]  Objection, Your Honor.  That’s derivative hearsay.

THE COURT:  Sustained. 

[DEFENSE COUNSEL:]  I’d ask that the jury be instructed to disregard.

THE COURT:  You’ll disregard the last question and answer.

[DEFENSE COUNSEL:]  Move for mistrial.

THE COURT:  Denied.

Considering the nature of the State’s question and Schneider’s answer, it appears the hearsay testimony was of a character that could be cured by the instruction to disregard.  
See id
.  Accordingly, we hold that the trial court did not abuse its discretion in denying Appellant’s motion for mistrial.  
See Ladd
, 3 S.W.3d at 567.
  Moreover, the extent of other evidence involving the attempted murder of Burns precludes harm because the testimony to which Appellant objected was cumulative of other testimony from Burns and Sergeant Simpson.  Looking at all of the other testimony concerning the attempt on Burns’s life, Schneider’s answer was not so inflammatory as to undermine the efficacy of the trial court’s instruction to disregard it.  
See Hinojosa
, 4 S.W.3d at 253.  We overrule Appellant’s sixth issue.

VII.  CONCLUSION

Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.  
 

PER CURIAM

PANEL F: GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  June 12, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Burns also testified on cross-examination that while she had a drug problem in the past, she had not used any on the day of her attack.