COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-518-CR
 
CALVIN PAUL WALKER                                                            APPELLANT
V.
THE STATE OF TEXAS                                                              
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
I. INTRODUCTION
       
Appellant Calvin Paul Walker appeals his conviction by a jury for the attempted
murder of Susan Burns. Appellant raises six issues for our review: (1 & 2)
that the trial court erred by not including the lesser included offenses of
aggravated assault with a deadly weapon and assault with bodily injury in the
jury charge; (3) that the evidence was factually insufficient to support
Appellant's conviction for attempted murder; (4 & 5) that the trial court
erred by admitting prejudicial hearsay; and (6) that the trial court erred by
denying Appellant's motion for mistrial after a witness testified she was told
there was an attempt on Burns's life. We will affirm.
II. FACTUAL AND PROCEDURAL
HISTORY
       
During trial, the State presented evidence that Donnie Glassey, who was on
federal probation at the time of Burns's attack, was the leader of a theft ring
operating in Tarrant County in 2000. Susan Burns, Joe Briton, DeeDee Schneider,
Darren Soltier, Darla McCullough, and others participated in the ring. Susan
Burns testified that she became aware of the theft ring in the fall of 2000. At
that time, Burns was living with Soltier and McCullough, and Soltier was
supplying the group illegal drugs. Another individual with the street name
"K Dog" also provided them with drugs.
       
In November 2000, Burns and Briton were arrested for a robbery at a Boot Town
store, and Glassey bonded them out of jail the next day. Burns told Glassey that
if he did not reveal to the police the people who actually committed the crime,
she was going to go to the police herself to tell them everything about the
theft ring and its crimes, including that Glassey had told her he committed the
Boot Town theft.
       
DeeDee Schneider testified that Glassey told her he wanted to "take care
of" Burns and Briton, who were causing him problems, because Glassey did
not want to go back to jail. Schneider testified that, on the evening of
December 6, 2000, she observed Glassey mixing antifreeze with Gatorade and
purchasing crack cocaine that he had asked to be "cooked down" with
rat poison. Schneider said that Glassey told her he was going to "take care
of the problems." Schneider testified that, on the same night, she called
the police because she knew that Glassey planned to kill Burns and Briton.
       
Burns testified at trial, that after their release from jail, Burns and Briton
went to the Caravan Motel in Arlington, Texas. Briton was afraid and left town
on December 5, 2000. Burns remained at the motel with her eleven-year-old black
Labrador, Harley. Burns spoke with Glassey on the phone, and they agreed to meet
at the Caravan Motel. Glassey was to bring beer, pizza, and crack cocaine.
       
On the evening of December 7, Glassey, K Dog, and a third man, later identified
as Appellant, went to room 127 at the Caravan Motel, where Burns was staying
with her dog, Harley. Burns described how after entering the room, Appellant
kicked Harley, which upset Burns. Glassey suggested that K Dog take the dog with
him to get the beer and pizza, but Burns refused to let him take the dog. K Dog
left the room alone, and Glassey offered to take the dog outside for a walk,
which Burns permitted him to do.
       
Burns testified that as soon as Glassey took the dog outside, Appellant hit
Burns in the head, knocked her to the ground, wrapped a cord around her neck,
and started to strangle her. At first, Burns said she was able to get her hand
under the cord to keep it from covering her windpipe. Burns testified that the
cord was cutting into her neck like a knife, and she was screaming for help.
Because her hand was under the cord, Burns was able to pull the cord hard enough
to break it. Appellant was not deterred, however, and he again wrapped the cord
around her neck. This time, Burns did not get her hand under the cord, and she
testified that she could not breathe at all, she felt her eye pop, there was
blood in her eye, and her ears were pounding. Burns testified that she had an
out-of-body experience and "felt like [she] was up in the corner of the
room . . . looking down at [her]self and [she] was saying, Susie he is killing
you, he's killing you, do something, and [she] couldn't do anything."
       
During the attack, Sergeant Mark Simpson arrived at the motel to check on Burns
and Briton because of Schneider's earlier conversation with the police. Sergeant
Simpson testified that he saw Glassey standing outside of room 127 with a black
dog. Sergeant Simpson approached Glassey and asked if he was Briton and if Burns
was in the room. Before he could ask another question, Sergeant Simpson heard a
muffled cry come from inside the room, followed by a noise that sounded like a
body falling against the glass front of the motel room, followed by a
high-pitched squeal.
       
Sergeant Simpson testified that he tried to get in the room, but the door was
locked. He pounded on the door, identified himself as a police officer, and
demanded that he be let inside the room. Glassey also began beating on the
window, yelling "the cops are here." Glassey then let go of the dog
and ran away. Burns testified that when she heard the banging and pounding,
Appellant let go of the cord and ran toward the door in response to the noise.
Burns testified that when he ran out the door, it was as if she "sprang
back into [her] body," and she could finally breathe again.
       
Sergeant Simpson testified that the motel door flung open, and a man with a
build consistent with that of Appellant ran out the door, going in the opposite
direction of Glassey. While the door was open, Sergeant Simpson briefly saw
Burns in the room, but he did not have time to enter the room before the door
closed. Because he heard another scream, Sergeant Simpson did not chase either
man, but instead stayed at the room and convinced Burns to open the door again.
       
Sergeant Simpson testified that he observed Burns's skin color was a "very,
very deep purple" color, going into a mottled red color with free-flowing
blood coming from her hairline and bruising around her face. He also saw that
two pieces of electrical cord had been wrapped around her neck. The police
obtained a statement from K Dog and compiled a photospread that included
Appellant's picture. Burns identified Appellant as her attacker in the
photospread and independently identified Appellant as her attacker at trial.
After considering all of the evidence presented at trial, the jury convicted
Appellant of attempted murder and assessed a life sentence.
III. FACTUAL
SUFFICIENCY
       
In his third issue, Appellant contends that the evidence was factually
insufficient to support his conviction for attempted murder. We disagree.
       
In reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is factually insufficient if it
is so weak as to be clearly wrong and manifestly unjust or the adverse finding
is against the great weight and preponderance of the available evidence. Johnson,
23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all
the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the jury's verdict, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Id.
       
In performing this review, we give due deference to the fact finder's
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. We may
not substitute our judgment for that of the fact finder. Santellan v. State,
939 S.W.2d 155, 165 (Tex. Crim. App. 1997). Consequently, we may find the
evidence factually insufficient only where necessary to prevent manifest
injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997).
       
To make a determination of factual insufficiency, a complete examination of all
the relevant evidence is required. Johnson, 23 S.W.3d at 12. A proper
factual sufficiency review must include a discussion of the most important and
relevant evidence that supports the appellant's complaint on appeal. Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Appellant sets forth five
points in support of his challenge to the factual sufficiency of the evidence.
       
Appellant first contends that if Glassey wanted Burns dead, he could have killed
her with the poisoned Gatorade or crack cocaine. Thus, Appellant argues that
Glassey would not have needed an accomplice; however, Appellant suggests that if
Glassey merely wanted to "rough Burns up," an accomplice would be
helpful since Burns had a large dog. As the State points out, Glassey's intent
was not an element of the offense with which Appellant was charged. Appellant
was convicted of attempted murder, and we review the factual sufficiency of the
evidence only as to Appellant's intent, not Glassey's. See Tex. Penal
Code Ann. §§ 15.01, 19.02 (Vernon 2003).
       
Appellant also complains that the evidence was factually insufficient to show
that he had the specific intent to murder Burns. Appellant claims that the
evidence showed only the intent to commit an assault. Appellant argues that
Sergeant Simpson was helpless to prevent a murder because the door was locked,
and if Appellant had intended to kill Burns, he could have done so and then
fled. Appellant suggests that "this was not an aborted murder
attempt," but rather a "completed assault." The State responds
that Appellant had two choices when the police officer began beating on the
door; either he could have continued strangling Burns, or he could have tried to
escape. The fact that Appellant chose to run when Sergeant Simpson arrived does
not demonstrate that he had no intent to murder Burns while he was strangling
her.
       
Appellant further argues that the evidence was factually insufficient because
the electrical cord was not a deadly weapon. Appellant reasons that the fact
that the cord broke during the attack demonstrates that the cord was not strong
enough to serve as a garrote or to kill a person. While it is undisputed that
the cord broke when Burns got her hand between the cord and her neck, Burns
testified that her attacker continued to strangle her with the broken pieces and
that she could not breathe at all until her attacker stopped strangling her upon
being interrupted by the arrival of a police officer. Moreover, Detective Byron
Stewart, one of the investigating police officers in this case, examined the
cord and testified that the cord was a deadly weapon. We agree that the evidence
is factually sufficient that the cord, as used by Burns's attacker, constituted
a deadly weapon. See Tex. Penal Code Ann. § 1.07(a)(17)(B)
("'Deadly weapon' means . . . anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury."); McCain
v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding evidence that
a butcher knife was visible in a defendant's pocket as he assaulted a robbery
victim was sufficient to support a finding that he intended to use the knife in
a manner capable of causing death or serious bodily injury); Thomas v. State,
821 S.W.2d 616, 620 (Tex. Crim. App. 1991) (stating that objects such as
automobiles, telephone cords, bathwater, and feather pillows may become deadly
weapons by virtue of the manner in which they are used in an offense); Charleston
v. State, 33 S.W.3d 96, 100 (Tex. App.--Texarkana 2000, pet. ref'd)
(listing factors that may be used in determining whether an object is capable of
causing death or serious bodily injury, for purposes of establishing that an
object is a deadly weapon).
       
In support of his factual sufficiency challenge, Appellant also disputes whether
Burns suffered serious bodily injury. Appellant contends that Burns's medical
records, admitted as State's Exhibit Nine, contradicted her testimony that her
wrist and a rib were broken as a result of the attack. We agree with the State's
argument that serious bodily injury is not an element of the offense of
attempted murder. See Tex. Penal Code Ann. §§ 15.01, 19.02; Flanagan
v. State, 675 S.W.2d 734, 742 (Tex. Crim. App. 1984) (op. on reh'g).
       
Finally, Appellant maintains that the evidence was factually insufficient to
support his conviction because he alleges Burns was mistaken about the identity
of her attacker. Appellant refers to Sergeant Simpson's testimony that he only
had a glimpse of the attacker in the darkness and was not able to identify
anything more than the race and build of the man fleeing from Burns's room.
Appellant also points out that the police did not check Burns's room for
fingerprints. In short, Appellant argues the State had no case without Burns's
identification, which Appellant asserts was erroneous.
       
Burns positively identified Appellant as her attacker in a photographic lineup
and again at trial. Moreover, Burns testified that she based her in-court
identification on her recollection of the night of her attack, including the
moment that Appellant kicked her dog, Harley, and not on the photospread
identification.(2)  With respect to
Appellant's contention that Burns mistakenly identified him because she failed
to mention highlights in his hair, there is no evidence in the record to show
when any highlighting was done. As the State points out, Appellant's book-in
photo was taken more than two weeks after he attempted to strangle Burns;
therefore, the jury could have determined from the evidence that he changed his
hair color in that time period.
       
We have extensively reviewed the record under the applicable standards of
review, giving due deference to the fact finder's determinations. See
Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129. We hold that
the evidence was factually sufficient to support the verdict that Appellant
committed the offense of attempted murder. See Johnson, 23 S.W.3d at 7;
Clewis, 922 S.W.2d at 129. Accordingly, we overrule Appellant's third
issue.
IV. JURY CHARGE
       
In his first issue, Appellant argues that the trial court erred by overruling
his objection to the failure of the jury charge to include the lesser included
offense of aggravated assault with a deadly weapon. In his second issue,
Appellant complains that the trial court erred by overruling his objection to
the failure of the jury charge to include the lesser included offense of assault
with bodily injury. We disagree.
       
To determine whether a jury must be charged on a lesser included offense, we
apply a two-step analysis. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim.
App. 1998). The first step is to decide whether the offense is a "lesser
included offense" as defined in article 37.09 of the code of criminal
procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981); Moore,
969 S.W.2d at 8.
       
A lesser included offense is defined both in terms of the offense charged and
the facts of the case: "An offense is a lesser included offense if . . . it
is established by proof of the same or less than all the facts required to
establish the commission of the offense charged." Tex. Code Crim. Proc.
Ann. art. 37.09(1). Therefore, our analysis of whether an offense is a lesser
included offense of the charged offense must be made on a case-by-case basis. Bartholomew
v. State, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); Day v. State,
532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh'g). It does not matter
if the charged offense can be established on a theory that does not contain the
lesser offense; the issue is whether proof of the charged offense, in this
case, actually included proof of the lesser included offense as defined in
article 37.09. Schweinle v. State, 915 S.W.2d 17, 18 (Tex. Crim. App.
1996); Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).
       
The State does not argue under the first step; rather, the State asserts that
Appellant's claims fail because he cannot meet the second step of the test. See
Moore, 969 S.W.2d at 8; see also Godsey v. State, 719
S.W.2d 578, 584 (Tex. Crim. App. 1986) ("Aggravated assault . . . conduct
[is a] lesser included offense[] of attempted murder . . . ."); Nejnaoui
v. State, 44 S.W.3d 111, 118-19 (Tex. App.--Houston [14th Dist.]
2001, pet. ref'd) (stating that aggravated assault can be a lesser included
offense of attempted murder); Villarreal v. State, 809 S.W.2d 295, 298
(Tex. App.--Corpus Christi 1991, pet. ref'd) ("Appellant was entitled to a
charge on aggravated assault if the evidence showed that he, if guilty, was only
guilty of the lesser included offense of aggravated assault."); 18 Tex. Jur.
3d Criminal Law § 188 (2001) ("Aggravated assault is a lesser
included offense of . . . attempted murder.").
       
Under the second step, we evaluate the evidence to determine whether there is
some evidence that would permit a rational jury to find that the defendant is
guilty only of the lesser offense, and not of the greater. Lofton v. State,
45 S.W.3d 649, 652 (Tex. Crim. App. 2001); Moore, 969 S.W.2d at 8. The
evidence must be evaluated in the context of the entire record. Moore,
969 S.W.2d at 8. There must be some evidence from which a rational jury could
acquit the defendant on the greater offense while convicting him of the lesser
included offense. Id. The court may not consider whether the evidence
is credible, controverted, or in conflict with other evidence. Id. If
there is evidence from any source that negates or refutes the element
establishing the greater offense, or if the evidence is so weak that it is
subject to more than one reasonable inference regarding the aggravating element,
the jury should be charged on the lesser included offense. Schweinle,
915 S.W.2d at 19; Saunders v. State, 840 S.W.2d 390, 391-92 (Tex. Crim.
App. 1992).
       
The evidence at trial showed that Glassey wanted to kill Burns and that both he
and Appellant went to Burns's motel room. Appellant began strangling Burns, and
despite Burns's ability to break the cord, Appellant continued to strangle her.
The evidence indicates that Appellant only stopped strangling Burns when
Sergeant Simpson arrived and his presence was made known to Appellant.
       
Appellant's brief raises the same five points from his factual sufficiency
challenge in support of his charge issues. During Appellant's closing argument,
however, he argued under two broad theories: (1) that the cord was not a deadly
weapon; and (2) that Burns was mistaken about the identity of her attacker, so
the State failed to meet its burden of proving Appellant was the person who
attempted to murder Burns. At trial, Appellant presented no evidence that
Burns's attacker merely intended to "rough [her] up," as Appellant
contends in his brief. Appellant only presented evidence that neither the police
nor Burns could identify him as her attacker. Thus, Appellant sought to show
that he was not the person who attacked Burns, rather than showing that he only
intended to assault her.
       
Under these facts, the evidence that Appellant intended to murder Burns is not
so weak that it is subject to more than one reasonable inference. See
Schweinle, 915 S.W.2d at 19. Therefore, we hold that the trial court did
not err by refusing to include in the jury charge the lesser included offenses
of aggravated assault with a deadly weapon or assault with bodily injury. See
Wesbrook v. State, 29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000) (holding
defendant convicted of capital murder not entitled to instruction on aggravated
assault), cert. denied, 532 U.S. 944 (2001); Villarreal, 809
S.W.2d at 298 (holding defendant convicted of attempted murder was not entitled
to an aggravated assault charge).
       
Appellant also argues that to the extent we conclude he has not shown that he
was entitled to submission of the lesser included offenses, the case law
requiring affirmative evidence showing the commission of only the lesser
included offense violated his rights under the Fifth Amendment of the United
States Constitution because, as Appellant asserts, the law effectively compels a
defendant to take the stand and admit committing the lesser included offense but
deny committing the greater offense. See U.S. Const. amend. V.
Appellant did not object to the charge or otherwise raise this complaint in the
trial court. Accordingly, we hold that Appellant failed to preserve his alleged
constitutional error for our review by failing to timely object on that basis. See
Tex. R. App. P. 33.1; Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim.
App. 1990) (stating that even constitutional errors can be waived). We overrule
Appellant's first and second issues.
V. HEARSAY
       
In his fourth issue, Appellant contends that the trial court erroneously
admitted prejudicial hearsay testimony by Schneider that Glassey told her he
intended to take care of Burns. Additionally, Appellant complains by his fifth
issue that the trial court erroneously admitted prejudicial hearsay that Glassey
intended to take care of his problems. We disagree.
       
To preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the request,
objection, or motion. Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 526
U.S. 1070 (1999). In order to be considered timely, the objection must be made
at the first opportunity or as soon as the basis of the objection becomes
apparent. See id. The trial court's overruling of an objection to
evidence will not result in reversal when other such evidence was received
without objection, either before or after the complained-of ruling. Leday v.
State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); Beheler v. State,
3 S.W.3d 182, 187 (Tex. App.--Fort Worth 1999, pet. ref'd).
       
Appellant objected on the basis of hearsay to the State asking Schneider "[d]id
[Glassey] tell you what he was planning on doing that day?" After the State
argued several theories of admissibility, the court overruled Appellant's
objection. Schneider responded that Glassey told her "[h]e was going to
take care of Susan Burns and Joe Briton."
       
Following this question regarding Glassey's statement, Schneider testified that
she personally observed Glassey poisoning Gatorade and crack cocaine to give to
Burns and Briton. Schneider testified that she asked Glassey what he was doing.
When the State asked Schneider what Glassey told her, Appellant objected on the
basis of hearsay, which the court overruled. Appellant then requested a running
objection to the statements of Glassey as hearsay, to which the court responded,
"I'm uncomfortable with the running objection to that topic."
Appellant stated that he would rise to object, and Schneider then answered the
State's question, stating that Glassey said "[h]e was afraid of prison, and
he was going to take care of his problems before he was sent back to
prison."
       
A few moments later, Schneider testified without objection that she called the
police because she knew Glassey was going to kill Burns and Briton, and that she
told the police that "[Glassey] said he was going to kill [Burns] and
[Briton]." While Appellant objected to Glassey's statements about taking
care of Burns and Briton and taking care of his problems, Appellant failed to
continue objecting to the same testimony at other times during the trial.
Because Appellant did not object to this other testimony, we hold that he failed
to preserve his complaint for review, and any error in admitting the
complained-of testimony concerning Glassey taking care of Burns and Briton and
his problems was cured. See Leday, 983 S.W.2d at 718; Beheler,
3 S.W.3d at 187. Accordingly, we overrule Appellant's fourth and fifth issues.
VI. MOTION FOR MISTRIAL
       
In his sixth issue, Appellant complains that the trial court erroneously denied
his motion for mistrial after Schneider testified that she was told there was an
attempt on Burns's life. We disagree.
       
We review a trial court's denial of a motion for mistrial under an abuse of
discretion standard. See Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim.
App. 1999), cert. denied, 529 U.S. 1070 (2000). Mistrials are an
extreme remedy for curing prejudice occurring during trial. Bauder v. State,
921 S.W.2d 696, 698 (Tex. Crim. App. 1996). They ought to be exceedingly
uncommon and employed only when less drastic remedies are inadequate to the task
of removing residual prejudice. Id. A mistrial is only required when
the impropriety is clearly calculated to inflame the minds of the jury and is of
such a character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jury. Hinojosa v. State, 4 S.W.3d 240, 253
(Tex. Crim. App. 1999). Ordinarily, a prompt instruction to disregard will cure
error associated with an improper question and answer. Ovalle v. State,
13 S.W.3d 774, 783 (Tex. Crim. App. 2000).
       
Toward the end of Schneider's testimony on direct examination, the following
exchange occurred:

        
 [STATE:] Did you see Detective Price later on that night?
        
 [SCHNEIDER:] Yes.
        
 [STATE:] Did you understand that there was an attempt on [Burns's] life?
        
 [SCHNEIDER:] Yes.
        
 [DEFENSE COUNSEL:] Objection, Your Honor. That's derivative hearsay.
        
 THE COURT: Sustained.
        
 [DEFENSE COUNSEL:] I'd ask that the jury be instructed to disregard.
        
 THE COURT: You'll disregard the last question and answer.
         [DEFENSE
 COUNSEL:] Move for mistrial.
        
 THE COURT: Denied.

 
       
Considering the nature of the State's question and Schneider's answer, it
appears the hearsay testimony was of a character that could be cured by the
instruction to disregard. See id. Accordingly, we hold that the trial
court did not abuse its discretion in denying Appellant's motion for mistrial. See
Ladd, 3 S.W.3d at 567. Moreover, the extent of other evidence involving the
attempted murder of Burns precludes harm because the testimony to which
Appellant objected was cumulative of other testimony from Burns and Sergeant
Simpson. Looking at all of the other testimony concerning the attempt on Burns's
life, Schneider's answer was not so inflammatory as to undermine the efficacy of
the trial court's instruction to disregard it. See Hinojosa, 4 S.W.3d
at 253. We overrule Appellant's sixth issue.
VII. CONCLUSION
       
Having overruled all of Appellant's issues, we affirm the trial court's
judgment.
 
                                                           PER
CURIAM
 
PANEL F: GARDNER, LIVINGSTON, and
DAUPHINOT, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: June 12, 2003

1.  See Tex. R. App. P. 47.4.
2.  Burns also testified on cross-examination that
while she had a drug problem in the past, she had not used any on the day of her
attack.