John Wayne CHARLESTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00141–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 26, 2000.

Decided Nov. 2, 2000.

Ralph K. Burgess, Norton Burgess, LLP, Texarkana, for appellant.

Randal Lee, Crim. Dist. Atty., Tina M. Richardson, Cass County District Attorney's Office, Linden, for State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

John Wayne Charleston appeals his jury conviction for aggravated robbery. Charleston presents three points of error.

First, he asserts there is legally and factually insufficient evidence to support the conviction. Second, he contends his trial attorney's failure to move for a directed verdict constituted ineffective assistance of counsel. Finally, he argues that the trial court erred in denying his motion to disqualify his attorney.

On the morning of December 16, 1998, Nelva Whatley received a telephone call from a man she believed was an employee of the local gas company. The man asked her to wait for him so he could check her home's gas valves and have her sign paperwork.[1] At about 8:00 a.m., the man, later identifed as Charleston, arrived at the Whatleys' home. He was driving a white truck similar to those owned by the gas company, and he was dressed in what appeared to be a uniform. He used a meter to inspect the home and tightened a gas valve with a wrench. He then told Whatley that he was going to go to his truck to get the paperwork. At that point, Whatley walked into the bathroom to get a tissue. When she returned to the living room, Charleston grabbed her, held the wrench over her head, and told her she was being robbed. He ordered her to lie on the floor, taped her wrists together, and took the rings off her fingers. Charleston then asked Whatley the location of her safe. After Whatley told him she had no safe, he asked where her money was. She told him it was in her car, which was parked in a garage separate from the house. Charleston forced Whatley to walk with him to the car and show him where the money was located. He took the money, and as the two walked back to the house, Whatley noticed that Charleston was driving a white pickup with license plates bearing the numbers 1-9-2. Charleston once again forced Whatley onto the floor and this time placed a rocking chair over her. He grabbed her purse, ran out of the house, and drove away.

After she was certain Charleston was gone, Whatley ran through the woods to a neighbor's home and called her husband; he then called 9-1-1 and reported the attack to the police. A few hours later, based on information provided by Whatley's husband, Charleston was approached by a state trooper. Charleston was driving a white truck with license plates bearing the numbers 1-9-2 and met the description of Whatley's assailant. Whatley was called to the police station, where she identified Charleston as her attacker by pointing out his picture in a police photograph book.

The grand jury of Cass County indicted Charleston, and James Verschoyle was appointed as his attorney. Before trial, Charleston filed a pro se motion to disqualify Verschoyle, alleging a conflict of interest because Verschoyle had represented Whatley's husband in business dealings five years earlier. The court denied the motion, and the case proceeded to trial. The jury found Charleston guilty of aggravated robbery, and the court sentenced him to thirty-five years' confinement.

■ Charleston contends there is legally and factually insufficeint evidence to show that he used a deadly weapon in the attack, so a conviction for aggravated robbery cannot stand. In reviewing a legal sufficiency question, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim.App.1995).

Charleston was charged with aggravated robbery and robbery. A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he knowingly or intentionally threatens or places another in

1. Whatley and her husband had recently had gas lines installed in their new home, so she did not believe the call was out of the ordinary.

fear of imminent bodily injury or death. TEX. PEN.CODE ANN. § 29.02 (Vernon 1994). A person commits aggravated robbery if he uses or exhibits a deadly weapon in the course of a robbery. TEX. PEN.CODE ANN. § 29.03 (Vernon 1994). The indictment alleged that Charleston "used and exhibited a deadly weapon, to-wit: a wrench."

■ A wrench is not a deadly weapon per se, so the State was required to prove that, in the manner of its use or intended use, it was capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). The Court of Criminal Appeals recently stated that "an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000). In *McCain*, the court upheld a conviction for aggravated robbery where the assailant robbed a woman while carrying a butcher knife in his back pocket. While the assailant attacked the victim, she noticed the knife in his back pocket and was afraid he would cut her with it. Finding the knife to be a deadly weapon, the court stated,

[T]he mere carrying of a butcher knife during such a violent attack as occurred in the present case was legally sufficient for a factfinder to conclude that the "intended use" for the knife was that it be capable of causing death or serious bodily injury. Hence, the evidence was legally sufficient to show that the butcher knife was a deadly weapon under the circumstances.

*McCain v. State*, 22 S.W.3d at 503.

The evidence presented to the jury regarding the wrench used in this robbery consisted of the following testimony of the victim on direct examination:

Q. The wrench that you were talking about, did he at any time—how did he use that, other than tightening the—

A. —he tightened the valve up, and he wheeled me around when he grabbed me and told me I was being robbed, I saw it above my head like this.

Q. Do you think you would have been—based upon the manner and means of him using that, if he had used that as a weapon, would that have caused you serious bodily injury?

A. One blow would have killed me.

Additionally, Officer Ray Copeland testified on direct examination as follows:

Q. And you got an interview from Ms. Whatley and she described a wrench. Based upon your education, training and experience, could that wrench be a deadly weapon?

A. Yes, sir.

Charleston contends that the evidence is insufficient to support the use of a deadly weapon finding because the wrench was not introduced in evidence, the size and appearance of the wrench were not described, and he never verbally threatened serious injury or death. In light of the holding in *McCain*, we must determine if Charleston *intended* to use the wrench in a manner that would be *capable* of causing serious bodily injury or death. *McCain v. State*, 22 S.W.3d at 503.

First, we determine if the jury could have found that it was Charleston's *intent* to use the wrench in such a manner that it would be capable of causing serious bodily injury or death. Whatley testified that Charleston told her she was being robbed. She further testified that Charleston grabbed her, wheeled her around, and held the wrench over her head. According to Whatley's testimony, she, Charleston, and the wrench were in extremely close proximity. Although Charleston made no verbal threat except to tell Whatley she was being robbed, it can be inferred from the fact that he grabbed Whatley, wheeled her around, and held the wrench over her head while telling her he was robbing her, that he intended to use the wrench as a threat of bodily injury. It is not reasonable to speculate that, in this violent attack on Whatley, his holding the wrench above her

head was a meaningless gesture. A rational fact finder could conclude that Charleston used the wrench to facilitate the robbery, and that he intended to strike Whatley with the wrench or place her in fear of injury.

▮▮▮ Next we consider whether there is legally sufficient evidence to show that the wrench was *capable* of causing death or serious bodily injury. Charleston contends that in order for the evidence to be legally sufficient, some evidence of the size and shape of the wrench must be before the jury. The Texas Court of Criminal Appeals has approved several factors to be used in determining whether an object is capable of causing death or serious bodily injury: (1) physical proximity between the victim and the object, *Tisdale v. State* 686 S.W.2d 110, 115 (Tex.Crim.App.1984); (2) the threats or words used by the assailant, *Williams v. State,* 575 S.W.2d 30 (Tex. Crim.App. [Panel Op.] 1979); (3) the size and shape of the weapon, *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983); (4) the weapon's ability to inflict death or serious injury, *id.;* and (5) the manner in which the defendant used the weapon, *id.* No one factor is determinative, and each case must be examined on its own facts. *Brown v. State,* 716 S.W.2d 939, 946–47 (Tex.Crim.App.1986). Either expert testimony or lay testimony may be sufficient to support a finding. *English v. State,* 647 S.W.2d 667, 668–69 (Tex.Crim.App.1983). Introducing the weapon in evidence assists the jury, but the jury may determine the weapon was capable of causing death or serious bodily injury even if it is not in evidence. *Id.* at 669.

The jury heard Whatley's testimony that one blow from the wrench would have killed her. Additionally, Officer Ray Copeland testified that, based on Whatley's description of the wrench to him, the wrench was capable of being used as a deadly weapon. Considering the close proximity between Charleston and Whatley, the violent manner in which Charleston grabbed and handled Whatley, the way

Charleston used the wrench while he articulated his act of robbery, Whatley's testimony that the wrench could have killed her, and the testimony of the officer, the evidence is legally sufficient for the jury to find that Charleston used a deadly weapon. We therefore find that the jury's verdict of aggravated assault was based on legally sufficient evidence.

▮▮▮ A factual sufficiency review requires us to view the evidence in a neutral light, comparing the evidence that tends to prove the element in dispute with the evidence that tends to disprove the element. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000). We set aside the verdict only if the evidence is so weak or is so against the great weight and preponderance of the evidence as to make the verdict clearly wrong and unjust.

▮▮▮ The only element disputed by Charleston on factual sufficiency grounds is that he used a deadly weapon. As stated, the only testimony regarding the weapon was given by Whatley and the police officer. No other evidence was offered by the prosecution or the defense regarding the wrench. The jury had only that testimony to rely on in concluding that Charleston used a deadly weapon. It is not the province of this Court to evaluate the credibility of witnesses. In our review, we must employ appropriate deference to avoid substituting our judgment for that of the jury, and our evaluation should not substantially intrude on the jury's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State,* 944 S.W.2d 642, 648 (Tex. Crim.App.1996). Accordingly, we conclude that the jury's finding that Charleston used a deadly weapon is not clearly wrong or against the great weight and preponderance of the evidence.

▮▮▮ Charleston also contends that his trial attorney's failure to move for a directed verdict constituted ineffective assistance of counsel. The Sixth Amendment to the United States Constitution not

only guarantees the right to counsel, but the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The standard for testing claims of ineffective assistance of counsel was set out in *Strickland* and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). To prevail on an ineffective assistance of counsel claim, the appellant must prove by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness, and the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. 2052; *Rosales v. State,* 4 S.W.3d 228, 231 (Tex.Crim.App. 1999).

We have determined that the jury's verdict convicting Charleston of aggravated assault is based on legally and factually sufficient evidence; therefore, the failure of Charleston's trial attorney to move for a directed verdict did not prejudice his defense, and the claim of ineffective assistance fails.

Charleston contends that the trial court erred in denying his motion to disqualify his counsel, thereby allowing the attorney to represent him while under a conflict of interest. Charleston contends this also constituted ineffective assistance of counsel. To demonstrate ineffective assistance of counsel on this basis, Charleston must show that his counsel was burdened by an actual conflict of interest, and that the conflict had an adverse effect on counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *see also Strickland v. Washington,* 466 U.S. at 687–94, 104 S.Ct. 2052; *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997).

First we determine whether defense counsel labored under an actual conflict of interest. If counsel is required to choose between advancing his client's interests and the interests of another, there is an actual conflict of interest. *Monreal,* 947 S.W.2d at 564, *citing James v. State,* 763 S.W.2d 776, 779 (Tex.Crim. App.1989). A defendant is denied effective assistance of counsel when the attorney simultaneously represents a criminal defendant and a key prosecution witness, even if the matters are unrelated. *Castillo v. Estelle,* 504 F.2d 1243 (5th Cir.1974); *Ramirez v. State,* 13 S.W.3d 482 (Tex. App.—Corpus Christi 2000, no pet. h.). Additionally, a defendant is denied effective representation when the attorney is unable to properly cross-examine a witness due to a prior representation of that witness. *Ramirez v. State,* 13 S.W.3d at 488.

Mr. Verschoyle represented Whatley's husband five years earlier in some real estate and oil and gas transactions, but he never represented Mrs. Whatley.[2] At the time of trial, Verschoyle was not actively representing Mr. Whatley and had not done so in five years. He did not represent Mr. Whatley and Charleston simultaneously, nor did he represent the two on a substantially related matter. Verschoyle was not hindered in his cross-examination of Mrs. Whatley. He thoroughly examined her regarding her ability to identify Charleston, her ability to recall the precise time of day that he entered her house, and her ability to recall the precise time of day that she examined the police photograph book. There is no evidence indicating that Mr. Verschoyle's previous representation of Mr. Whatley impaired his cross-examination of Mrs. Whatley. Since Mr. Verschoyle's representation of Mr. Whatley ended five years before the

**2.** Charleston argues that Mrs. Whatley may have had community property rights in the subject matter of Verschoyle's representation of her husband and that the case should be remanded to the trial court for a hearing on the matter. Whether Mrs. Whatley had a community property interest in the subject matter of Mr. Whatley's representation is immaterial since the representation ceased five years before the trial, concerned an unrelated matter, and did not hinder Verschoyle in his cross examination of Mrs. Whatley.

trial, concerned an unrelated matter, and did not hinder him in his cross-examination of Mrs. Whatley, Mr. Verschoyle did not labor under an actual conflict of interest.

For the reasons stated, we affirm the judgment of the trial court.