NO. 07-07-0040-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B


 

JULY 5, 2007


______________________________



ARK OF SAFETY CHRISTIAN CHURCH, INC., APPELLANT



V.



CHURCH LOANS & INVESTMENTS TRUST, APPELLEE


_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 093264-00-E; HONORABLE ABE LOPEZ, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

OPINION


 Ark of Safety Christian Church (Ark) appeals from the granting of a summary
judgment by the trial court in favor of Church Loans & Investments Trust (Church Loans). 
Prior to filing its brief in response to Ark's appellate brief, Church Loans has filed a motion
to dismiss the appeal pursuant to Texas Rule of Appellate Procedure 42.3(c). We grant
the motion.




Procedural Background


 On December 5, 2006, the trial court entered a final summary judgment against Ark
in the amount of $57,750 in money damages, $24,000 in attorney fees, $7,170 in pre-judgment interest, and post-judgment interest accumulating at the rate of $19.90 per day. 
Ark subsequently filed a motion for new trial, which was overruled by order of the trial court
on January 26, 2007. Ark gave notice of appeal on February 16, 2007. On January 23,
2007, Church Loans initiated post-judgment discovery by serving interrogatories and
requests for production on Ark. The interrogatories and requests for production went
unanswered and subsequently, on March 26, 2007, Church Loans filed a motion to compel 
answers to post-judgment discovery. The trial court held a hearing on Church Loans's
motion to compel, on April 13, 2007, and ordered Ark to deliver full and complete answers
and responses by 5:00 p.m. on April 18, 2007. At the same time, Ark was further ordered
to pay reasonable attorney fees of $1,000 to Church Loans. Subsequently, on April 25,
2007, Church Loans filed a second motion to compel and a motion to show cause alleging
that Ark had failed to comply with the trial court's order of April 13, 2007. As a result of the
second motion, the trial court entered an order on April 27, 2007, requiring Ark to pay
counsel for Church Loans, by 5:00 p.m. on May 2, 2007, $2,500 as sanctions for Church
Loans being required to file a second motion to compel. The trial court also ordered Ark
to provide full and complete answers and responses to Church Loans's post-judgment
discovery by 5:00 p.m. on May 4, 2007. Further, the order of the trial court required Ark
to pay $1,000 for each business day after May 4, 2007, that full and complete discovery,
previously ordered, was not delivered to Church Loans. Finally, the trial court ordered that,
if Ark had not complied with the order of the trial court by May 4, 2007, Ark was to
personally appear before the court, by and through its Pastor, on Friday, May 11, 2007. 
On May 11, 2007, the trial court held a show cause hearing. The trial court held Ark's
representative in contempt and ordered additional sanctions, fines, and required that Ark
post a supersedeas bond in the amount of $100,000. The record reflects that no
supersedeas bond was filed and that Ark took no action to comply with the trial court's
orders.

Analysis


 Based upon the failure of Ark to answer the post-judgment discovery, pay the
associated sanctions, and/or file a supersedeas bond, Church Loans has requested this
court to dismiss the appeal. The losing party to a lawsuit for money damages has a choice
to either submit to the judgment or supersede the judgment by filing of a proper bond while
the case is pending appellate review. Hayes v. Hayes, 920 S.W.2d 344, 347
(Tex.App.-Texarkana 1996, writ denied). Since giving notice of appeal, Ark has neither
answered post-judgment discovery, a method whereby the judgment creditor can attempt
to enforce his judgment, nor has Ark superseded the judgment, even after being explicitly
ordered to do so by the trial court's order of May 11, 2007. Ark has, therefore, failed to
comply with an order of the trial court. Tex. R. App. P. 42.3(c). Church has filed a motion
requesting that we dismiss the appeal for Ark's failure to comply with the order of the trial
court. Ark, though served with a copy of the motion, has filed no response. Inasmuch as
the trial court's orders have not been complied with, we grant the dismissal of the appeal. 
Tex. R. App. P. 42.3 (c); Hayes , 920 S.W.2d at 347.

Conclusion


 Church's motion to dismiss is granted and the appeal is dismissed. 

 


 Mackey K. Hancock

 Justice



. 




cked="false" Priority="67" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0141-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 NOVEMBER 23, 2010



 

 



 

 

MARLIN JIM CROSS IV, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 47TH DISTRICT
COURT OF RANDALL COUNTY;

 

NO. 19,919-A; HONORABLE HAL MINER, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant, Marlin
Jim Cross IV, was convicted by a jury of aggravated robbery and burglary of a
habitation[1] and sentenced to two
concurrent sentences of fifteen and five years, respectively.  By four issues, Appellant seeks to overturn the
aggravated robbery conviction by asserting the State failed to prove the use or
exhibition of a deadly weapon.  We
affirm.  

Background

            On August
20, 2008, the Randall County Grand Jury returned a two count indictment against
Appellant.  Court One alleged that, on or
about May 9, 2008, Appellant, while in the course of committing theft of
property and with intent to obtain and maintain control of said property, did intentionally
and knowingly threaten and place Benton Cambern in fear of imminent bodily
injury and death, and did intentionally and knowingly use and exhibit a deadly
weapon, namely: a golf club, that in the manner of its use and intended use was
capable of causing death and serious bodily injury.  Count two alleged that, on or about May 9,
2008, Appellant did intentionally and knowingly enter a habitation without the
effective consent of Benton Cambern, the owner thereof, and therein attempted
to commit and committed theft.

            At trial, Cambern, a college student
living in Amarillo, Texas, testified that, on May 9, 2008, he was packing his
car in anticipation of driving to Pampa, Texas, to start a summer job as an
electrician.  During the process, he entered
and exited his house through a door adjoining his garage.  His garage door was open and his car was
parked in the driveway.  

            While he was in the house, he heard
a jingling sound in the garage and ran to the garage door where he observed Appellant
running away carrying two sets of golf clubs. 
Cambern pursued Appellant to a car parked in the alley behind a fence
next to his driveway.  As Appellant attempted
to place the golf bags in the car, Cambern ran to the front of the car and
placed his hands on its hood.  He could
see three persons through the windshield--Appellant, a driver (later identified
as Nathan St. Clair), and a female passenger in the backseat.  He yelled at them to stop but the car began
to back up.  Fearing Appellant was going
to escape, Cambern ran to the driver's side of the
car, struck the driver in the face and took the keys out of the ignition.  He then began backing up the alley away from
the front of the car while dialing 911.  

            As he was dialing, the driver exited
and approached Cambern asking that he return the keys.  As Cambern continued to back up, he observed Appellant
yanking an eight iron from one of the golf bags.  Although his first thought was to get a gun
he had packed in his car, he did feel "very threatened" and
"scared," and he believed he had better get out of the way or he was "going
to get the tar beat out of [him]."  

            Cambern bolted toward his vehicle, running
past Appellant.  As he did, Appellant
raised the golf club "like he [was] going to hit me with it like you would
a baseball bat . . . like you are going to slug someone."  At that time, Appellant was approximately four
feet away and Cambern expected to "get swung at or hit, so [he] arched his
back and hurried as quick[ly] as [he] could to the car to get [his]
gun."  After Cambern retrieved the gun
from his car, Appellant and his cohorts ran away, leaving the golf clubs beside
the car in the alley.  

            Cambern testified Appellant was
"holding [the golf club] like he was going to swing, and that's when I
took off, four feet away, when he was going to hit [me]."  "[Appellant] pulled [the golf club] out
and put it in a threatening manner. . . ." 
Cambern also testified that "[o]ne of those [golf clubs] hurt to
get hit with . . . I've been hit with them before on accident" and
"had some pretty severe bumps from them." 

            St. Clair, the driver of the vehicle,
testified that he, Appellant, and Appellant's girlfriend were driving through
the neighborhood when they observed Cambern's open garage door.  Appellant told St. Clair to stop when he
observed the golf clubs in the garage. 
Appellant then ran from the car, grabbed the clubs, and brought them back
to the car.  As Appellant was running to
the car, he noticed Cambern coming out of the garage.  St. Clair testified, in a signed statement to
police, that after Cambern struck him in the face and retrieved the car keys,
"[Appellant] picked up the iron and told Cambern to give the keys back or
he would knock the f--- out" of him. 
He also wrote, in his signed statement, that Appellant handed him a club
and told him to hit Cambern.[2]

            Appellant was convicted of
aggravated robbery and burglary of a habitation and sentenced to two concurrent
sentences of fifteen and five years confinement,
respectively.  He seeks to overturn the
aggravated robbery conviction by attacking the legal and factual sufficiency of
two findings: (1) whether the golf club used was a "deadly weapon"
and (2) whether Appellant "exhibited or used" the golf club in the
course of committing theft.

            I.          Legal and Factual Sufficiency

            Heretofore appellate courts have struggled with the
distinction between legal and factual sufficiency of the evidence challenges.  The Texas Court of Criminal Appeals has
recently held that the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt
is the standard set forth in Jackson v. Virginia.[3]  See
Brooks v. State, No. PD-0210-09, 2010 WL 3894613
(Tex.Crim.App. Oct. 6, 2010) (plurality op.)[4]  Under
that standard, in assessing the sufficiency of the evidence to support a
criminal conviction, this Court considers all the evidence in the light most
favorable to the verdict and determines whether, based on that evidence and
reasonable inferences to be drawn therefrom, a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.   Id. (citing Jackson, 443 U.S. at 319).

            




II.         Aggravated
Robbery--Deadly Weapon

            A person is
guilty of aggravated robbery if he or she uses or exhibits a deadly weapon in
the course of committing a robbery.  Tex.
Penal Code Ann. § 20.03(a)(2) (Vernon 2003).[5]  See Gomez
v. State, 685 S.W.2d 333, 336 (Tex.Crim.App. 1985) (proof of the use or
exhibition of a deadly weapon is an essential element of the offense).  A "deadly weapon" means a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury or anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury.  § 1.07(a)(17)(A),(B).  

            Because a golf club is made for a purpose
other than to inflict death or cause serious bodily injury, the eight iron at issue will not qualify as a deadly weapon unless
actually used in such a way as to be capable of causing death or serious bodily
injury.  Thomas v. State, 821 S.W.2d 616, 620
(Tex.Crim.App. 1991).  See § 1.07(a)(17)(B).  Thus, the eight iron
can qualify as a deadly weapon "by showing, among other things, the manner
of the [object's] use or intended use, its size and shape, and its capacity to
produce death or serious bodily injury." 
Billey v. State,
895 S.W.2d 417, 421 (Tex.App. --Amarillo 1995, pet. ref'd).  See
Denham v. State, 574 S.W.2d 129, 130
(Tex.Crim.App. 1983).

            Each case is examined on its own
facts to determine whether the fact finder could have concluded from the
surrounding circumstances that an object is capable of causing death or serious
bodily injury.  See Billey, 895 S.W.2d at 421 (citing Brown v. State, 716 S.W.2d 939, 947 (Tex.Crim.App. 1986)).  The Court of Criminal Appeals has utilized
several factors to assist in such a determination:  

(1) the physical
proximity between the victim and the object;
Tisdale v. State, 686 S.W.2d 110, 115 (Tex.Crim.App. 1984); (2) the threats
or words used by the assailant; Williams
v. State, 575 S.W.2d 30 (Tex.Crim.App. [Panel Op.] 1979);
(3) the size and shape of the weapon; Blain
v. State, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983); (4) the weapon's
ability to inflict death or serious injury; id.
and (5) the manner in which the defendant used the
weapon.  Id.

Charleston v. State, 33 S.W.3d
96, 100 (Tex.App.--Texarkana 2000, pet. ref'd).

            The State is not required to
establish that the object is a deadly weapon through expert testimony; Denham, 574 S.W.2d at 131, though expert
or lay testimony may be sufficient to support a finding; English v. State, 647 S.W.2d 667, 668-69 (Tex.Crim.App. 1983), and
introducing the object in evidence assists the jury in its determination.  Charleston,
33 S.W.3d at 100 (citing English, 647
S.W.2d at 669).  The presence or severity
of wounds may also be considered, but wounds are not a prerequisite to a
finding that the object is a deadly weapon. 
Hammons v. State,
856 S.W.2d 797, 800-01 (Tex.App.--Fort Worth 1993, no pet.) (citing Denham, 574
S.W.2d at 130)).  

            Here, interpreting the evidence in a
light most favorable to the verdict, Appellant and Cambern were only four feet
apart when Appellant yanked the eight iron from the golf bag and told Cambern
to give him the car keys or he would "knock the f--- out" of
him.  Cambern felt "very
threatened" and "scared" and he believed Appellant was going to
beat him with the club.  Cambern also
testified that getting hit with a golf club "hurt" and could cause
"some pretty severe bumps."  In
addition, the jury had an opportunity to visualize the eight iron
and judge for themselves whether the club was, under the circumstances, capable
of causing death or serious bodily harm. 

            We find that, from all the
circumstances, a rational trier of fact could have found Appellant intended to
use the eight iron in a manner capable of causing
serious bodily injury.  See generally Adame v. State, 69 S.W.3d 581, 585 (Tex.Crim.App. 2002) (BB pistol pointed
at robbery victim); McCain v. State,
22 S.W.3d 497, 503 (Tex.Crim.App. 2000) (butcher knife partially visible in
robber's back pocket by robbery victim); Charleston,
33 S.W.3d at 99-100 (wrench held over the head of the robbery victim); Hammons, 856 S.W.2d at 800-01 (robbery
victim struck by baseball bat); Enriquez
v. State, 826 S.W.2d 191, 192-93 (Tex.App.--El Paso 1992, no pet.) (robbery victim struck by 16-ounce soft drink bottle with Styrofoam
sleeve); Jackson v. State, 668 S.W.2d
723, 725 (Tex.App.--Houston [14th Dist.] 1983, pet. ref'd) (robbery victim
struck by ax handle).  

            Appellant points to the absence of
certain evidence as supporting his assertion that the State failed to meet its
burden of proof.  He also asserts the
golf club was not a deadly weapon because Cambern was not struck.  We are unpersuaded.  A deadly weapon finding may be found where
the robbery victim was threatened, as here, but not struck by the weapon.  See McCain, 22 S.W.3d at 497;
Charleston, 33 S.W.3d at 99-100; Billey, 895 S.W.2d at 422-23.  Further, "it is sufficient if the weapon
is capable of causing death or serious bodily injury or is displayed in a
manner conveying an express or implied threat that serious bodily injury will
result if the aggressor is not satisfied." 
Hammons, 856 S.W.2d at 801
(citing Jackson v. State, 668 S.W.2d
723, 725 (Tex.App. --Houston [14th Dist.] 1983, pet. ref'd)).  Appellant's
first and second issues are overruled.

            III.        In the Course of Committing Theft

            Appellant also
asserts that he did not possess the eight iron in the
course of committing a theft because he had abandoned the theft when he
brandished the eight iron and only sought return of the car keys.

            "'In the course of committing a
theft,' means conduct that occurs in an attempt to commit, during the
commission, or in immediate flight after the attempt or commission of
theft."  § 29.01(1).  See Garza v. State, 937 S.W.2d 569, 570-71 (Tex.App.--San Antonio
1996, pet. ref'd).  The actual
commission of theft is not a prerequisite of the offense of robbery; id. (citing Autry v. State, 626 S.W.2d 758, 762
(Tex.Crim.App. 1982), cert. denied,
459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982)), and the attempt or
commission of theft may be inferred from circumstances, actions, and
conduct.  Johnson v. State, 541 S.W.2d 185, 187
(Tex.Crim.App. 1976).

            The record indicates Appellant
brandished the eight iron to obtain the car keys
retrieved by Cambern and escape with, or without, the golf clubs.  In either instance, he used the eight iron "in the course of committing a theft."  § 29.01(1). 
See Chamberlin v. State, 704 S.W.2d 801, 802-03 (Tex.App.--Dallas, no pet.).  Moreover, even if he intended to abandon the golf
clubs when he threatened Cambern, his proscribed conduct would still constitute
robbery.  Id. at 803.  Appellant's third and fourth issues are overruled. 

Conclusion

            The trial
courts judgment is affirmed.    

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  

 

Do not publish.











[1]See Tex. Penal Code Ann. §§ 29.03, 30.02
(Vernon 2003).





[2]St. Clair's rendition of the events
that day was inconsistent and contradictory. 
He also maintained that, while he was making the statement, he was
"coming off drugs," the officers were coercing him, and hinting at
what he needed to say.  In conducting a
sufficiency of the evidence review, we consider the evidence in a light most
favorable to the jury's verdict; Brooks
v. State, No. PD-0210-09, 2010 Tex.Crim.App. LEXIS 1240, at 14 (Tex.Crim.App. Oct. 6,
2010), while giving due deference to the jury's credibility and weight
determinations.  Id.
at *25-26. See Marshal v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).  The jury is the exclusive judge of the
credibility of witnesses, and the reconciliation of conflicts in the testimony
is also within the exclusive province of the jury.  Tex. Code Crim. Proc. Ann.
arts. 36.13 & 38.04 (Vernon  1979 & 2007); Jones v. State,
944 S.W.2d 642, 647 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118
S.Ct. 100, 139 L.Ed.2d 54 (1997).  Accordingly,
the jury was free to believe or disbelieve St. Clair's claims of his
drug-induced state or alleged police misconduct.  See Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).    





[3]Jackson v. Virginia, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d
560 (1979).





[4]While
we are not bound by a plurality decision, Pearson
v. State, 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the
combined opinions of Judges Hervey and Cochran in Brooks as abandoning factual sufficiency as an evidentiary
sufficiency standard of review distinct from legal sufficiency.

 





[5]Citation
to provisions of the Texas Penal Code throughout the remainder of this opinion
will be simply as "section ____" or "§ ____."