In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00008-CR

                                                ______________________________

 

 

                                  MICHAEL LYNN PHELPS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR01675

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            After
an incident in which Michael Lynn Phelps struck his wife, Roxanna, repeatedly
with a 2” x 2” board with a nail protruding from it, threw scalding water on
her, hit her with a broom handle, kicked her with his boot-clad feet, punched
her with his fists, strangled her, slammed her head against a wall, sexually
assaulted her with a shampoo bottle, and smeared dog feces on her, Phelps was
convicted by a jury of aggravated assault with a deadly weapon.  After pleading true to the State’s
enhancement paragraph, Phelps was sentenced to sixty years’ imprisonment.  Phelps has appealed his conviction with his
sole point of error on appeal being that he says that he believes the evidence
is insufficient to support the jury’s finding that he used or exhibited a
deadly weapon during the commission of the assault.  Because we find the evidence sufficient to
support this finding by the jury, we overrule Phelps’ sole point of error and
affirm the trial court’s judgment. 

I.          Standard of Review

            In
evaluating legal sufficiency, we review all the evidence in the light most
favorable to the jury’s verdict to determine whether any rational jury could
have found the essential elements of aggravated assault with a deadly weapon
beyond a reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref’d)
(citing Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007)).  Our
rigorous legal sufficiency review focuses on the quality of the evidence
presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury “to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).  

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically-correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App.
2008); Vega v. State, 267 S.W.3d 912,
916 (Tex. Crim. App. 2008).  Under the
hypothetically-correct jury charge, the State was obligated to prove (1) that
Phelps intentionally or knowingly caused bodily injury to Roxanna and (2) that
he used or exhibited a deadly weapon during the commission of the assault.  Tex.
Penal Code Ann. §§ 22.01, 22.02(a)(2) (West 2011).  Here, the State’s indictment alleged Phelps
“did then and there use or exhibit a deadly weapon, to-wit:  a piece of wood with a nail protruding from
it.”  Phelps does not challenge the
allegation that he intentionally or knowingly caused bodily injury to
Roxanna.  Rather, Phelps complains, “Although
there is evidence that the piece of wood was capable of causing, and did cause,
bodily injury in its manner of use, there is insufficient evidence that it was
capable of causing serious bodily injury.” 


            Under
the Texas Penal Code, a deadly weapon is “anything that in the manner of its
use or intended use is capable of causing death or serious bodily injury”; it
need not actually cause death or serious bodily injury.[1]  Tex.
Penal Code Ann. § 1.07(a)(17)(B) (West 2011); Charleston v. State, 33 S.W.3d 96, 100 (Tex. App.—Texarkana 2000,
pet. ref’d).  Serious bodily injury
includes bodily injury that creates a “protracted loss or impairment of the
function of any bodily member or organ.” 
Tex. Penal Code Ann. §
1.07(a)(46) (West 2011).  

            Because
the wooden board in this case was not designed, made, or adapted for the purpose
of inflicting bodily injury, it is not a deadly weapon per se.  See
McCain, 22 S.W.3d at 502; In re S.B.,
117 S.W.3d 443, 446 (Tex. App.—Fort Worth 2003, no pet.); Charleston, 33 S.W.3d at 99.  The following five-factor test can be used in
determining whether the wooden board could have been determined to be
classified as a deadly weapon:  (1) physical
proximity between the victim and the object; (2) the threats or words used by
the assailant; (3) the size and shape of the weapon; (4) the weapon’s ability
to inflict death or serious injury; and (5) the manner in which the defendant
used the weapon.  Nash v. State, 175 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, pet.
ref’d) (citing Brown v. State, 716
S.W.2d 939, 946–47 (Tex. Crim. App. 1986); Tisdale
v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984); English v. State, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983); Blain v. State, 647 S.W.2d 293, 294
(Tex. Crim. App. 1983); Williams v. State,
575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979)).  No one factor is determinative, and each case
must be examined on its own facts.  Either
expert testimony or lay testimony may be sufficient to support a finding.  English,
647 S.W.2d at 668–69.

II.        Roxanna’s Testimony
Established that the Wooden Board Was a Deadly Weapon

            At
trial, Roxanna recounted a history of domestic violence.  She testified that Phelps believed she might
have been having an affair, at one point telling her that he had seen someone
“running out the back door” of their residence, and at another point becoming
jealous when he came across MySpace and Facebook pages that appeared to be
Roxanna’s.  Roxanna insisted that she had
not created new profiles on MySpace and Facebook and that the profile Phelps
was viewing was not hers.  She claimed
that Phelps’ jealousy was provoked on the day of the incident by the barking of
their dogs.  She testified:

He says, go look and see who’s out there, or
what’s out there.  And I told him, if I
look and tell you there’s nothing out there, you’re not going to believe me
anyway.  . . . I said, you go look out
the window.  The next thing I know, he’s
done swung a punch and hit me in the face.  . . . He was yelling at me and then he looked
and he seen the blood and he said, oh, my God, you know, what did I do.  He went and got ice.  He said, see, if you wouldn’t talk to me that
way, I wouldn’t have to get angry with you like this. 

 

            Phelps
next advised Roxanna to admit that the profiles he saw on Facebook and MySpace
were created by her.  In an effort to put
an end to Phelps’ violent behavior, Roxanna told Phelps that the profiles were
hers.  Contrary to her belief, the
requested admission did not cause a cessation of the violent conduct.  She testified,

He calmed down for a little bit and then he got angry
again.  He said, you lied to me, you lied
to me, and then it just got worse and worse and it escalated again.  He started hitting me again.  . . . He hit me in the face several
times.  Drug me into the living
room.  I was on the couch.  He said do not move.  He came back with a board. 

 

            A
nail protruded from the board, described as a “2x2,” which appeared to be a
board that had been separated from a railing used on the deck of the
residence.  Phelps used the board to hit
Roxanna’s face, the nail in the board leaving a deep scar on her cheek.  One of the blows with the board by Phelps on
Roxanna’s knee was of sufficient force and violence as to cause the board to
break in two, not an inconsiderable blow. 
Roxanna testified, “He said he was going to bust my kneecap.”  

            Phelps
continued his abuse of Roxanna by throwing scalding water at her face, which
caused the skin contacted by the water to “bubble[] out at the time.”  He also beat her on her legs with a broom
handle, kicked her while wearing boots, punched her with his fists, strangled
her, rubbed her with dog feces, slammed her head against a wall, and sexually
assaulted her with a shampoo bottle. 
After the incident, Roxanna was left severely battered and bruised, as
demonstrated in the pictures taken by the police after the incident had come to
an end.[2]  She was transported by ambulance to Paris
Regional Medical Center, where medical personnel noted that she had sustained
“multiple lacerations, bruising, [and] burns from head to toe.”  Roxanna testified that the wooden board could
have caused her death or serious injury and that she still bore scars on her
knee from the incident.  

            Reviewing
all the evidence in the light most favorable to the jury’s verdict, we find it
sufficient for a rational jury to have concluded that the piece of wood, as
used and as threatened to be used, was a deadly weapon.  First, Roxanna testified (and Phelps
concedes) “that the piece of wood with a protruding nail was theoretically capable
of causing serious bodily injury.” 
According to Phelps, “the more difficult issue is whether the manner of
the use of the piece of wood in this particular situation establishes that it
was used as a deadly weapon.”  Phelps
used the board to hit Roxanna in the face and on her knee.  In addition to the actual employment of the
piece of wood to strike her, he threatened her with serious injury or
protracted loss or impairment to her knee by stating he was “going to bust
[her] kneecap.”  Because Phelps used the
board, which he concedes was capable of causing bodily injury, to hit Roxanna
in the knee with such force that the board broke in two, the jury could find
that the manner of his use of the board could inflict serious injury.  Therefore, we find the evidence legally
sufficient for a jury to have found that Phelps used a deadly weapon during the
commission of his assault against Roxanna. 
See Bailey v. State, 46 S.W.3d
487 (Tex. App.—Corpus Christi 2001, pet. ref’d) (finding boards capable of
causing serious bodily injury). 

            We
overrule Phelps’ sole point of error.  

III.       Conclusion


            We
affirm the judgment of the trial court. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          July 19, 2011

Date Decided:             July 21, 2011

 

Do Not Publish           

 











[1]In
McCain v. State, 22 S.W.3d 497, 503
(Tex. Crim. App. 2000), the court stated regarding Section 1.07(a)(17)(B)
that:  

 

The
provision’s plain language does not require that the actor actually intend
death or serious bodily injury; an object is a deadly weapon if the actor
intends a use of the object in which it would be capable of causing death or
serious bodily injury.  The placement of
the word “capable” in the provision enables the statute to cover conduct that
threatens deadly force, even if the actor has no intention of actually using
deadly force.





[2]Roxanna
also suffered a broken nose, which required plastic surgery to remedy.  However, it is unclear from the record whether
her nose was broken when Phelps hit her in the face with the board, or whether
this injury occurred before or after the board was used.