

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00008-CR

_____


## MICHAEL LYNN PHELPS, Appellant

## V.

## THE STATE OF TEXAS, Appellee


On Appeal from the 6th Judicial District Court
Red River County, Texas
Trial Court No. CR01675


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After an incident in which Michael Lynn Phelps struck his wife, Roxanna, repeatedly with a 2" x 2" board with a nail protruding from it, threw scalding water on her, hit her with a broom handle, kicked her with his boot-clad feet, punched her with his fists, strangled her, slammed her head against a wall, sexually assaulted her with a shampoo bottle, and smeared dog feces on her, Phelps was convicted by a jury of aggravated assault with a deadly weapon. After pleading true to the State's enhancement paragraph, Phelps was sentenced to sixty years' imprisonment. Phelps has appealed his conviction with his sole point of error on appeal being that he says that he believes the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the assault. Because we find the evidence sufficient to support this finding by the jury, we overrule Phelps' sole point of error and affirm the trial court's judgment.

## I.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on

the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Under the hypothetically-correct jury charge, the State was obligated to prove (1) that Phelps intentionally or knowingly caused bodily injury to Roxanna and (2) that he used or exhibited a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §§ 22.01, 22.02(a)(2) (West 2011). Here, the State's indictment alleged Phelps "did then and there use or exhibit a deadly weapon, to-wit: a piece of wood with a nail protruding from it." Phelps does not challenge the allegation that he intentionally or knowingly caused bodily injury to Roxanna. Rather, Phelps complains, "Although there is evidence that the piece of wood was capable of causing, and did cause, bodily injury in its manner of use, there is insufficient evidence that it was capable of causing serious bodily injury."

Under the Texas Penal Code, a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"; it need not actually cause death

3

or serious bodily injury.[1]  TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2011); *Charleston v. State*, 33 S.W.3d 96, 100 (Tex. App.—Texarkana 2000, pet. ref'd).  Serious bodily injury includes bodily injury that creates a "protracted loss or impairment of the function of any bodily member or organ."  TEX. PENAL CODE ANN. § 1.07(a)(46) (West 2011).

Because the wooden board in this case was not designed, made, or adapted for the purpose of inflicting bodily injury, it is not a deadly weapon per se.  *See McCain*, 22 S.W.3d at 502; *In re S.B.*, 117 S.W.3d 443, 446 (Tex. App.—Fort Worth 2003, no pet.); *Charleston*, 33 S.W.3d at 99.  The following five-factor test can be used in determining whether the wooden board could have been determined to be classified as a deadly weapon:  (1) physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon.  *Nash v. State*, 175 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986); *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984); *English v. State*, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983); *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); *Williams v. State*, 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979)).  No one factor is determinative, and each

---

[1]In *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000), the court stated regarding Section 1.07(a)(17)(B) that:

> The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury.  The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

case must be examined on its own facts. Either expert testimony or lay testimony may be sufficient to support a finding. *English*, 647 S.W.2d at 668–69.

## II. Roxanna's Testimony Established that the Wooden Board Was a Deadly Weapon

At trial, Roxanna recounted a history of domestic violence. She testified that Phelps believed she might have been having an affair, at one point telling her that he had seen someone "running out the back door" of their residence, and at another point becoming jealous when he came across MySpace and Facebook pages that appeared to be Roxanna's. Roxanna insisted that she had not created new profiles on MySpace and Facebook and that the profile Phelps was viewing was not hers. She claimed that Phelps' jealousy was provoked on the day of the incident by the barking of their dogs. She testified:

> He says, go look and see who's out there, or what's out there. And I told him, if I look and tell you there's nothing out there, you're not going to believe me anyway. . . . I said, you go look out the window. The next thing I know, he's done swung a punch and hit me in the face. . . . He was yelling at me and then he looked and he seen the blood and he said, oh, my God, you know, what did I do. He went and got ice. He said, see, if you wouldn't talk to me that way, I wouldn't have to get angry with you like this.

Phelps next advised Roxanna to admit that the profiles he saw on Facebook and MySpace were created by her. In an effort to put an end to Phelps' violent behavior, Roxanna told Phelps that the profiles were hers. Contrary to her belief, the requested admission did not cause a cessation of the violent conduct. She testified,

> He calmed down for a little bit and then he got angry again. He said, you lied to me, you lied to me, and then it just got worse and worse and it escalated again. He

5

started hitting me again. . . . He hit me in the face several times. Drug me into the living room. I was on the couch. He said do not move. He came back with a board.

A nail protruded from the board, described as a "2x2," which appeared to be a board that had been separated from a railing used on the deck of the residence. Phelps used the board to hit Roxanna's face, the nail in the board leaving a deep scar on her cheek. One of the blows with the board by Phelps on Roxanna's knee was of sufficient force and violence as to cause the board to break in two, not an inconsiderable blow. Roxanna testified, "He said he was going to bust my kneecap."

Phelps continued his abuse of Roxanna by throwing scalding water at her face, which caused the skin contacted by the water to "bubble[] out at the time." He also beat her on her legs with a broom handle, kicked her while wearing boots, punched her with his fists, strangled her, rubbed her with dog feces, slammed her head against a wall, and sexually assaulted her with a shampoo bottle. After the incident, Roxanna was left severely battered and bruised, as demonstrated in the pictures taken by the police after the incident had come to an end.[2] She was transported by ambulance to Paris Regional Medical Center, where medical personnel noted that she had sustained "multiple lacerations, bruising, [and] burns from head to toe." Roxanna testified that the wooden board could have caused her death or serious injury and that she still bore scars on her knee from the incident.

---

[2]Roxanna also suffered a broken nose, which required plastic surgery to remedy. However, it is unclear from the record whether her nose was broken when Phelps hit her in the face with the board, or whether this injury occurred before or after the board was used.

Reviewing all the evidence in the light most favorable to the jury's verdict, we find it sufficient for a rational jury to have concluded that the piece of wood, as used and as threatened to be used, was a deadly weapon. First, Roxanna testified (and Phelps concedes) "that the piece of wood with a protruding nail was theoretically capable of causing serious bodily injury." According to Phelps, "the more difficult issue is whether the manner of the use of the piece of wood in this particular situation establishes that it was used as a deadly weapon." Phelps used the board to hit Roxanna in the face and on her knee. In addition to the actual employment of the piece of wood to strike her, he threatened her with serious injury or protracted loss or impairment to her knee by stating he was "going to bust [her] kneecap." Because Phelps used the board, which he concedes was capable of causing bodily injury, to hit Roxanna in the knee with such force that the board broke in two, the jury could find that the manner of his use of the board could inflict serious injury. Therefore, we find the evidence legally sufficient for a jury to have found that Phelps used a deadly weapon during the commission of his assault against Roxanna. *See Bailey v. State*, 46 S.W.3d 487 (Tex. App.—Corpus Christi 2001, pet. ref'd) (finding boards capable of causing serious bodily injury).

We overrule Phelps' sole point of error.

## III.    Conclusion

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:    July 19, 2011
Date Decided:      July 21, 2011

Do Not Publish

8