NO. 07-09-0141-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 23, 2010

_____

MARLIN JIM CROSS IV, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 19,919-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Marlin Jim Cross IV, was convicted by a jury of aggravated robbery and burglary of a habitation[1] and sentenced to two concurrent sentences of fifteen and five years, respectively. By four issues, Appellant seeks to overturn the aggravated

---

[1]*See* Tex. Penal Code Ann. §§ 29.03, 30.02 (Vernon 2003).

robbery conviction by asserting the State failed to prove the use or exhibition of a deadly weapon.  We affirm.

## Background

On August 20, 2008, the Randall County Grand Jury returned a two count indictment against Appellant.  Court One alleged that, on or about May 9, 2008, Appellant, while in the course of committing theft of property and with intent to obtain and maintain control of said property, did intentionally and knowingly threaten and place Benton Cambern in fear of imminent bodily injury and death, and did intentionally and knowingly use and exhibit a deadly weapon, namely: a golf club, that in the manner of its use and intended use was capable of causing death and serious bodily injury.  Count two alleged that, on or about May 9, 2008, Appellant did intentionally and knowingly enter a habitation without the effective consent of Benton Cambern, the owner thereof, and therein attempted to commit and committed theft.

At trial, Cambern, a college student living in Amarillo, Texas, testified that, on May 9, 2008, he was packing his car in anticipation of driving to Pampa, Texas, to start a summer job as an electrician.  During the process, he entered and exited his house through a door adjoining his garage.  His garage door was open and his car was parked in the driveway.

While he was in the house, he heard a jingling sound in the garage and ran to the garage door where he observed Appellant running away carrying two sets of golf clubs.  Cambern pursued Appellant to a car parked in the alley behind a fence next to his driveway.  As Appellant attempted to place the golf bags in the car, Cambern ran to the

2

front of the car and placed his hands on its hood. He could see three persons through the windshield--Appellant, a driver (later identified as Nathan St. Clair), and a female passenger in the backseat. He yelled at them to stop but the car began to back up. Fearing Appellant was going to escape, Cambern ran to the driver's side of the car, struck the driver in the face and took the keys out of the ignition. He then began backing up the alley away from the front of the car while dialing 911.

As he was dialing, the driver exited and approached Cambern asking that he return the keys. As Cambern continued to back up, he observed Appellant yanking an eight iron from one of the golf bags. Although his first thought was to get a gun he had packed in his car, he did feel "very threatened" and "scared," and he believed he had better get out of the way or he was "going to get the tar beat out of [him]."

Cambern bolted toward his vehicle, running past Appellant. As he did, Appellant raised the golf club "like he [was] going to hit me with it like you would a baseball bat . . . like you are going to slug someone." At that time, Appellant was approximately four feet away and Cambern expected to "get swung at or hit, so [he] arched his back and hurried as quick[ly] as [he] could to the car to get [his] gun." After Cambern retrieved the gun from his car, Appellant and his cohorts ran away, leaving the golf clubs beside the car in the alley.

Cambern testified Appellant was "holding [the golf club] like he was going to swing, and that's when I took off, four feet away, when he was going to hit [me]." "[Appellant] pulled [the golf club] out and put it in a threatening manner. . . ." Cambern

3

also testified that "[o]ne of those [golf clubs] hurt to get hit with . . . I've been hit with them before on accident" and "had some pretty severe bumps from them."

St. Clair, the driver of the vehicle, testified that he, Appellant, and Appellant's girlfriend were driving through the neighborhood when they observed Cambern's open garage door. Appellant told St. Clair to stop when he observed the golf clubs in the garage. Appellant then ran from the car, grabbed the clubs, and brought them back to the car. As Appellant was running to the car, he noticed Cambern coming out of the garage. St. Clair testified, in a signed statement to police, that after Cambern struck him in the face and retrieved the car keys, "[Appellant] picked up the iron and told Cambern to give the keys back or he would knock the f--- out" of him. He also wrote, in his signed statement, that Appellant handed him a club and told him to hit Cambern.[2]

Appellant was convicted of aggravated robbery and burglary of a habitation and sentenced to two concurrent sentences of fifteen and five years confinement, respectively. He seeks to overturn the aggravated robbery conviction by attacking the legal and factual sufficiency of two findings: (1) whether the golf club used was a

---

[2]St. Clair's rendition of the events that day was inconsistent and contradictory. He also maintained that, while he was making the statement, he was "coming off drugs," the officers were coercing him, and hinting at what he needed to say. In conducting a sufficiency of the evidence review, we consider the evidence in a light most favorable to the jury's verdict; *Brooks v. State*, No. PD-0210-09, 2010 Tex.Crim.App. LEXIS 1240, at 14 (Tex.Crim.App. Oct. 6, 2010), while giving due deference to the jury's credibility and weight determinations. *Id.* at *25-26. *See Marshal v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). The jury is the "exclusive judge of the credibility of witnesses," and the reconciliation of conflicts in the testimony is also within the "exclusive province of the jury." Tex. Code Crim. Proc. Ann. arts. 36.13 & 38.04 (Vernon 1979 & 2007); *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). Accordingly, the jury was free to believe or disbelieve St. Clair's claims of his drug-induced state or alleged police misconduct. See *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

"deadly weapon" and (2) whether Appellant "exhibited or used" the golf club in the course of committing theft.

## I.   Legal and Factual Sufficiency

Heretofore appellate courts have struggled with the distinction between legal and factual sufficiency of the evidence challenges.  The Texas Court of Criminal Appeals has recently held that the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia.*[3]   *See Brooks v. State,* No. PD-0210-09, 2010 WL 3894613 (Tex.Crim.App. Oct. 6, 2010) (plurality op.)[4]   Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *Jackson,* 443 U.S. at 319).

---

[3]*Jackson v. Virginia,* 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

[4]While we are not bound by a plurality decision, *Pearson v. State,* 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the combined opinions of Judges Hervey and Cochran in *Brooks* as abandoning factual sufficiency as an evidentiary sufficiency standard of review distinct from legal sufficiency.

## II.     Aggravated Robbery--Deadly Weapon

A person is guilty of aggravated robbery if he or she uses or exhibits a deadly weapon in the course of committing a robbery.  Tex. Penal Code Ann. § 20.03(a)(2) (Vernon 2003).[5]  *See Gomez v. State*, 685 S.W.2d 333, 336 (Tex.Crim.App. 1985) (proof of the use or exhibition of a deadly weapon is an essential element of the offense).  A "deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.  § 1.07(a)(17)(A),(B).

Because a golf club is made for a purpose other than to inflict death or cause serious bodily injury, the eight iron at issue will not qualify as a deadly weapon unless actually used in such a way as to be capable of causing death or serious bodily injury. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991).  *See* § 1.07(a)(17)(B). Thus, the eight iron can qualify as a deadly weapon "by showing, among other things, the manner of the [object's] use or intended use, its size and shape, and its capacity to produce death or serious bodily injury." *Billey v. State*, 895 S.W.2d 417, 421 (Tex.App. --Amarillo 1995, pet. ref'd).  *See Denham v. State*, 574 S.W.2d 129, 130 (Tex.Crim.App. 1983).

Each case is examined on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that an object is capable of

---

[5]Citation to provisions of the Texas Penal Code throughout the remainder of this opinion will be simply as "section ____" or "§ ____."

causing death or serious bodily injury. *See Billey*, 895 S.W.2d at 421 (citing *Brown v. State,* 716 S.W.2d 939, 947 (Tex.Crim.App. 1986)). The Court of Criminal Appeals has utilized several factors to assist in such a determination:

> (1) the physical proximity between the victim and the object*; Tisdale v. State,* 686 S.W.2d 110, 115 (Tex.Crim.App. 1984); (2) the threats or words used by the assailant; *Williams v. State*, 575 S.W.2d 30 (Tex.Crim.App. [Panel Op.] 1979); (3) the size and shape of the weapon; *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983); (4) the weapon's ability to inflict death or serious injury; *id.* and (5) the manner in which the defendant used the weapon. *Id.*

*Charleston v. State*, 33 S.W.3d 96, 100 (Tex.App.--Texarkana 2000, pet. ref'd).

The State is not required to establish that the object is a deadly weapon through expert testimony; *Denham*, 574 S.W.2d at 131, though expert or lay testimony may be sufficient to support a finding; *English v. State*, 647 S.W.2d 667, 668-69 (Tex.Crim.App. 1983), and introducing the object in evidence assists the jury in its determination. *Charleston*, 33 S.W.3d at 100 (citing *English*, 647 S.W.2d at 669). The presence or severity of wounds may also be considered, but wounds are not a prerequisite to a finding that the object is a deadly weapon. *Hammons v. State*, 856 S.W.2d 797, 800-01 (Tex.App.--Fort Worth 1993, no pet.) (citing *Denham*, 574 S.W.2d at 130)).

Here, interpreting the evidence in a light most favorable to the verdict, Appellant and Cambern were only four feet apart when Appellant yanked the eight iron from the golf bag and told Cambern to give him the car keys or he would "knock the f--- out" of him. Cambern felt "very threatened" and "scared" and he believed Appellant was going to beat him with the club. Cambern also testified that getting hit with a golf club "hurt" and could cause "some pretty severe bumps." In addition, the jury had an opportunity

7

to visualize the eight iron and judge for themselves whether the club was, under the circumstances, capable of causing death or serious bodily harm.

We find that, from all the circumstances, a rational trier of fact could have found Appellant intended to use the eight iron in a manner capable of causing serious bodily injury. *See generally Adame v. State*, 69 S.W.3d 581, 585 (Tex.Crim.App. 2002) (BB pistol pointed at robbery victim); *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000) (butcher knife partially visible in robber's back pocket by robbery victim); *Charleston,* 33 S.W.3d at 99-100 (wrench held over the head of the robbery victim); *Hammons*, 856 S.W.2d at 800-01 (robbery victim struck by baseball bat); *Enriquez v. State*, 826 S.W.2d 191, 192-93 (Tex.App.--El Paso 1992, no pet.) (robbery victim struck by 16-ounce soft drink bottle with Styrofoam sleeve); *Jackson v. State*, 668 S.W.2d 723, 725 (Tex.App.--Houston [14th Dist.] 1983, pet. ref'd) (robbery victim struck by ax handle).

Appellant points to the absence of certain evidence as supporting his assertion that the State failed to meet its burden of proof. He also asserts the golf club was not a deadly weapon because Cambern was not struck. We are unpersuaded. A deadly weapon finding may be found where the robbery victim was threatened, as here, but not struck by the weapon. See *McCain*, 22 S.W.3d at 497; *Charleston,* 33 S.W.3d at 99-100; *Billey,* 895 S.W.2d at 422-23. Further, "it is sufficient if the weapon is capable of causing death or serious bodily injury or is displayed in a manner conveying an express or implied threat that serious bodily injury will result if the aggressor is not satisfied." *Hammons*, 856 S.W.2d at 801 (citing *Jackson v. State*, 668 S.W.2d 723, 725 (Tex.App.

8

--Houston [14th Dist.] 1983, pet. ref'd)).   Appellant's first and second issues are overruled.

### III.   In the Course of Committing Theft

Appellant also asserts that he did not possess the eight iron in the course of committing a theft because he had abandoned the theft when he brandished the eight iron and only sought return of the car keys.

"'In the course of committing a theft,' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."   § 29.01(1).   *See Garza v. State*, 937 S.W.2d 569, 570-71 (Tex.App.--San Antonio 1996, pet. ref'd).   The actual commission of theft is not a prerequisite of the offense of robbery*; id.* (citing *Autry v. State*, 626 S.W.2d 758, 762 (Tex.Crim.App. 1982), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982)), and the attempt or commission of theft may be inferred from circumstances, actions, and conduct. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex.Crim.App. 1976).

The record indicates Appellant brandished the eight iron to obtain the car keys retrieved by Cambern and escape with, or without, the golf clubs.  In either instance, he used the eight iron "in the course of committing a theft."  § 29.01(1).  *See Chamberlin v. State*, 704 S.W.2d 801, 802-03 (Tex.App.--Dallas, no pet.).   Moreover, even if he intended to abandon the golf clubs when he threatened Cambern, his proscribed conduct would still constitute robbery.  *Id.* at 803.  Appellant's third and fourth issues are overruled.

9

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.