**Opinion issued January 28, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01004-CR

_____

**GARONZICK GLENN MASS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 68053**

---

## MEMORANDUM OPINION

A Brazoria County grand jury indicted Garonzick Glenn Mass for the felony offense of aggravated robbery, and the case was tried before a jury. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). The jury found Mass guilty and found

true an enhancement paragraph alleging his prior conviction for possession of a controlled substance. The jury assessed punishment at a $10,000 fine and thirty years' confinement.

On appeal, Mass contends that the evidence is legally insufficient to support his conviction for aggravated robbery and that the trial court erred in denying his request for a jury instruction on assault as a lesser included offense of aggravated robbery. Finding that the evidence is sufficient to support the conviction and that the trial court did not err in denying Mass's requested jury instruction, we affirm.

### Background

In May 2012, Abdel Naji was working as an unarmed security guard at a mall in Pearland. As part of his responsibilities, he used a golf cart with a flashing light on top to patrol the mall parking lot. One late evening, as Abdel Naji was completing his patrol, he noticed a man, later identified as Mass. The man looked angry and was holding a length of white PVC pipe. Naji watched as the man removed his hat, threw it on the ground, and started walking toward Naji. Naji returned the golf cart to its storage shed and, still wearing his security badge, got into his personal car for greater safety. He drove closer to the man, opened his window slightly, and asked, "How can I help you, sir?" Mass asked Naji, "Are you security?" Naji responded, "Yes, I'm security." Next, Mass asked Naji, "Are you black?" At first, Naji tried to appease him by saying that he was, but Mass

said, "No, you are not black." Naji responded, "Don't worry man. We are brother. We are brother. Don't worry." Mass replied, "No. Give me your money." Naji said he didn't have any money, but Mass repeated, "Give me money." Mass continued to handle the pole while he came toward Naji. At that point, Naji testified, he stepped on the gas to drive away because he was afraid that Mass would hurt him with the pole. Mass swung hard at Naji's car with the pole, striking and denting the trunk. Naji found an officer in his patrol car in the back of the shopping center and spoke to him about the incident. The officer accompanied Naji to the location that Naji last saw Mass, but Mass had left the area, so the officer called dispatch to report the incident and give a description of Mass.

Officer Lucas, a five year veteran of the Pearland Police Department responded to the dispatch call. He noticed a man who seemed to fit Mass's description standing by a gas station near the mall. The man was walking a dog and holding a white plastic pole. Officer Lucas approached, drew his weapon, and ordered the man to drop the pole. Mass confirmed that, in response to Officer Lucas's demand, he threw the pole into the retention pond behind him and started to yell that he didn't do anything. Officer Lucas instructed Mass to walk toward him and place his hands on the hood of the police cruiser. Mass complied with that request, but Officer Lucas noticed that Mass seemed a little hostile. Mass was uncooperative and jerked his arm out from underneath Officer Lucas while Officer

3

Lucas placed handcuffs on him. After securing Mass in his patrol car, Officer Lucas retrieved the pole from the retention pond.

Deputy M. Armstrong of the Brazoria County Sheriff's Office also responded to the dispatch call. He arrived after Officer Lucas had already apprehended Mass. Deputy Armstrong noticed that Mass appeared intoxicated, had slurred speech and red, bloodshot eyes, and was using foul language and acting very aggressively toward the officers.

The State showed the jury the PVC pole that Moss used in the incident. The jury also saw pictures of Naji's car, showing the damage caused by the pole. The pole left a large dent and white transfer marks on the car trunk. Deputy Armstrong testified that it took a heavy blow to cause that type of damage to the vehicle.

Mass testified that he was visiting his mother at her home in Pearland on the night of the incident. That evening, he took the dog for a two-hour walk to Wal-Mart to buy dog snacks and beer. He recounted that Naji approached him from across the street and asked, "Hey, sir, what's wrong with you, what's the problem?" Mass looked angrily at Naji, then Naji got scared and "burned off." He denied trying to rob Naji and suggested that perhaps they had a language barrier. Mass admitted to holding the PVC pole, but denied hitting Naji's car; he suggested that the dent and white mark on the trunk came from Naji hitting his own car. Moss speculated that he was being profiled, "being a black guy, black hat, big dog,

4

big stick." On cross-examination, Mass admitted to having two prior felony convictions: one for possession of a controlled substance in 1992 and the other for delivery of a controlled substance in 1998.

## Discussion

### I. Evidentiary Sufficiency

#### A. Standard of review

Mass contends that the evidence is insufficient to support the conviction for aggravated robbery because the State failed to prove that the PVC pole was a deadly weapon. We review evidentiary sufficiency challenges under the *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). ("[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.") (referring to *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071

(1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Viewed in the light most favorable to the verdict, the evidence is insufficient when either: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Laster*, 275 S.W.3d at 518. This standard applies equally to both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

We do not weigh any evidence or evaluate the credibility of any witnesses, as this was the function of the fact finder. *Williams*, 235 S.W.3d at 750. Instead, we determine whether both the explicit and implicit findings of the fact finder are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

## B.     Applicable law

Under the Texas Penal Code provisions relevant to this case, a person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN.

§ 29.02 (West 2011). Aggravated robbery occurs if the person, in the course of committing a robbery, "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. § 29.03. "Deadly weapon" means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(17)(B) (West Supp. 2013).

Some of the factors that a jury may consider in determining whether an object is a deadly weapon under this definition include:

- the size and shape of the weapon;
- testimony by the victim that he feared death or serious bodily injury;
- the severity of any wounds inflicted;
- whether the assailant used the weapon in a manner conveying an express or implied threat that bodily injury or death will result if the assailant is not satisfied;
- physical proximity of the parties; and
- testimony as to the weapon's potential for causing death or serious bodily injury.

*Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978); *Bui v. State*, 964 S.W.2d 335, 342–43 (Tex. App.—Texarkana 1998, pet. ref'd) (evidence sufficient to find fabricated fireplace log was deadly weapon); *see also Jackson v. State*, 668 S.W.2d 723, 725 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (evidence sufficient to find ax handle deadly weapon where victim testified he was

7

afraid and officer testified the ax handle could be a deadly weapon). "No one factor is determinative, and an appellate court must examine each case on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that the object used was a deadly weapon." *In re S.B.*, 117 S.W.3d 443, 447 (Tex. App.—Fort Worth 2003, no pet.) (citing *Brown v. State*, 716 S.W.2d 939, 947 (Tex. Crim. App. 1986)).

The plain language of the Texas Penal Code does not require that the actor actually intend death or serious bodily injury in using the object, only that the actor intended to use it in a manner that renders it capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 & n.4 (Tex. Crim. App. 2000). Thus, the State must show only that the "use or intended use is capable of causing death or serious bodily injury." *Id.* (emphasis in original), *quoted in Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). ."Intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker." *Romero*, 331 S.W.3d at 83–84 (citing *Johnson v. State*, 919 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, pet. ref'd)); *see Charleston v. State*, 33 S.W.3d 96, 99–100 (Tex. App.—Texarkana 2000, pet. ref'd) (finding sufficient evidence of deadly weapon where defendant told victim he was robbing her and held wrench over her head, and victim testified that wrench could have killed her with one hit). Whether an object, in its use or intended use, is capable of causing death or serious

8

bodily injury must be evaluated in light of the facts that existed when the assault occurred. *See Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). If the evidence supports a reasonable inference that the manner of the actor's intended use of the object was capable of causing death or serious bodily injury, it is sufficient to support a deadly weapon finding. *See Morales v. State*, 633 S.W.2d 866, 868–69 (Tex. Crim. App. 1982); *Romero*, 331 S.W.3d at 83.

### C. Analysis

Mass specifically challenges the sufficiency of the evidence that the PVC pole was capable of causing death or serious bodily injury, claiming that Deputy Armstrong's testimony falls short because his opinion of its deadliness is conditioned on whether it was used "in the correct way." Mass claims that no evidence shows the pole was capable of causing death or serious bodily injury in the way Mass actually used it. We disagree. Naji testified that Mass hit his car hard. The State provided photographs of the dent, and the jury also had the opportunity to inspect the pole itself. Deputy Armstrong opined the PVC pole could be used as a deadly weapon and that Mass used heavy force in hitting the trunk. This evidence, viewed in the light most favorable to the verdict, is sufficient to support the jury's finding that Moss intended or threaten to use the pole in a manner that rendered it capable of causing death or serious bodily injury. As a result, we hold that sufficient evidence supports the jury's deadly weapon finding.

9

## II. Denial of lesser-included offense instruction

Mass contends that the trial court erred in denying his request for jury instructions on the lesser-included offense of misdemeanor assault.[1] We apply a two-pronged test to determine whether Mass was entitled to a charge on a lesser-included offense. *See Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). If it is, we then decide whether the admitted evidence supports the instruction. *Id.* An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006); *Aguilar v. State*, 263 S.W.3d 430, 435 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

---

[1] At trial, Mass sought instructions on the lesser-included offenses of misdemeanor assault and robbery. The discussion of his appellate issues refers, at one point, to lesser-included offenses in the plural, but the argument and authorities included in his appellate brief address only the denial of the lesser-included assault instruction. We address that specific contention, but consider any contention that the trial court erred in denying the lesser-included robbery instruction as waived. *See* TEX. R. APP. P. 38.1.

The evidence supports a lesser-included offense instruction if it permits a rational jury to find the defendant guilty only of the lesser-included offense. *Goad*, 354 S.W.3d at 446. It is not enough, however, that the jury may disbelieve crucial evidence pertaining to the greater offense. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). The record must contain some evidence directly germane to the lesser-included offense that establishes that the lesser-included offense is a valid, rational alternative to the charged offense. *Goad*, 354 S.W.3d at 446; *see also Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense."). In determining whether the record satisfies this requirement, we consider all of the evidence admitted at trial—not just the evidence presented by the defendant—regardless of its credibility or whether it conflicts with other evidence. *Goad*, 354 S.W.3d at 446–47.

Assault may be a lesser-included offense of robbery, depending on the manner and means alleged. *See Bell v. State*, 693 S.W.2d 434, 436 n.3 (Tex. Crim. App. 1985). The indictment in this case alleged that Mass

> did then and there while in the course of committing theft of property owned by Adel Naji, and with the intent to obtain or maintain control of said property, intentionally or knowingly threaten[ed] or place[d] Adel Naji in fear of imminent bodily injury or death, and . . . use[d] or exhibit[ed] a deadly weapon, namely, a stick [or] a pole, which in the

manner of its use or intended use was capable of causing death or serious bodily injury.

An assault occurs when a person "intentionally, knowingly, or recklessly threatens another with imminent bodily injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2013). According to Mass, the evidence at trial could have led the jury to believe that Mass did not demand money from Naji, but only that Naji was afraid and Mass hit his car with the pole. But for Mass to have been entitled to a misdemeanor assault charge, the record also must contain some affirmative evidence that would have permitted a rational jury to find that Mass did not use a deadly weapon in committing the assault, that is, that Mass did not use the pole in a manner capable of causing death or serious bodily injury. *See Dobbins v. State*, 228 S.W.3d 761, 769 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd); *see also Sweed*, 351 S.W.3d at 70–71 (explaining that aggravated assault is lesser-included offense of aggravated robbery because both require that actor intentionally or knowingly threaten person with imminent bodily injury and use or exhibit deadly weapon during commission of offense).

The jury heard that Mass was handling the pole while appearing very angry and advancing toward Naji. Naji testified that he got into his car when he saw Mass because he felt that he was in danger, He stated that he was afraid while speaking to Mass, because he believed that Mass might hit him with the pole. Mass testified that he found the pole beside a store and picked it up to use as a

12

walking stick and that, in his mind, it wasn't a weapon. Mass's subjective opinion on whether the pole was a deadly weapon, though, is not affirmative evidence that he did not intend to use the pole in such a manner that it was capable of causing serious bodily injury or death. *See McElhaney v. State*, 899 S.W.2d 15, 17–18 (Tex. App.—Tyler 1995, pet. dism'd); *see also Bignall v. State*, 887 S.W.2d 21 (Tex. Crim App. 1994) (rejecting simple assault as lesser included offense of aggravated robbery when a pipe was used, because "[t]he second prong of the test . . . does not mandate a speculative inquiry into whether the jury might not have been convinced about one of the aggravating elements. . . ."); *Spencer v. State*, No. 14-99-00969-CR, 2000 WL 1752766 at *4–5 (Tex. App.—Houston [14 Dist.] Nov. 30, 2000, pet. ref'd) (mem. op., not designated for publication) (speculation that the jury "might have believed" that screwdriver was not a deadly weapon, without evidence that it was not used as one, did not entitle defendant to the lesser-included offense of assault); *cf. Bridges v. State*, 389 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that defendant was entitled to instruction for simple assault where defendant denied having knife during altercation with complainant and complainant testified at trial that she cut her hand during altercation when defendant took knife away from her). Mass denied hitting the car with the PVC pole as Naji tried to escape the altercation. Mass did not claim that, although an assault may have occurred, it did not involve the pole. The evidence

13

may have supported the submission of aggravated assault as a lesser-included offense to the robbery charge, but it does not support misdemeanor assault as a valid, rational alternative to the charged offense, given that Naji denied the robbery and assault entirely but not the use of the pole to commit it.[2] We hold that the trial court did not err in refusing to submit the lesser-included offense of misdemeanor assault.

## Conclusion

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).

---

[2]    Mass did not ask the trial court to submit aggravated assault.